MATTER OF LOUIE

In DEPORTATION Proceedings

A-12635510

*Decided by Board March 26, 1963*

"Extreme hardship" within the meaning of section 244(a)(1) of the Immigration and Nationality Act of 1952, as amended by the Act of October 24, 1962, would result from the deportation of respondent, a 42-year-old native and citizen of China, who has resided continuously in the United States for a period of 11 years, in view of the great difficulty he would experience at his age in obtaining employment or in adjusting to life in a new country, and in view of the advanced age (72) and permanent disability of his partially-dependent United States citizen father.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant remained longer than permitted.

This case is before us on appeal from a decision of a special inquiry officer denying the respondent's three applications mentioned above and directing his deportation. For the reasons hereinafter mentioned, we will grant the application for suspension of deportation, and the other applications need not be considered.

**Discussion As To Deportability:** The respondent is a 42-year-old married male, native and citizen of China, who last entered the United States on August 21, 1951 at which time he was admitted as a nonimmigrant visitor authorized to remain in this country until November 21, 1951. He has remained in the United States without authority and has conceded that he is deportable on the charge stated in the order to show cause.

**Discussion As To Eligibility For Suspension of Deportation:** On February 16, 1962 the respondent applied for suspension of deportation under section 244(a)(5) of the Immigration and Nationality Act. Prior to the decision of the special inquiry officer on December 20, 1962, this statutory provision had been amended by section 4 of the Act of October 24, 1962 (Public Law 87-885; 76 Stat. 1247). Originally section 244(a) authorized the Attorney General to suspend

deportation in acordance with the statutory requirements which were set out. Since such action had not been taken prior to the amendment of October 24, 1962, it follows that the respondent's case must be determined under the applicable provision of the amended section, that is, Section 244(a) (1).

The respondent was born on the mainland of China and lived there until 1949. He stated that at that time he fled to Hong Kong because the Communists were taking control of China. He left Hong Kong for Central America in 1950. He was married in 1950 while still in Hong Kong, and one child was born there of the marriage on March 5, 1951. The respondent's wife and child still reside in Hong Kong and she is employed there as a nursemaid in an orphanage. The respondent contributes to their support by sending $50 to $100 monthly. He has been employed in the United States as a waiter and now earns about $85 weekly. In his application for suspension of deportation, he stated that his assets amounted to $2,350.

The respondent's statement of November 6, 1961 (Ex. 8, p. 2) contains information verifying his admission as a nonimmigrant on August 21, 1951, and he has testified that he has not been absent on any occasion since that date. The special inquiry officer concluded that the respondent had been physically present in the United States for a continuous period of at least ten years, and we are also satisfied from the record as to the respondent's continuous physical presence in this country since August 21, 1951. It follows that he meets the requirement of section 244(a) (1), as amended, concerning physical presence in the United States for a continuous period of not less than seven years.

The special inquiry officer also concluded that the respondent had established good moral character during the statutory period. The respondent testified that he had never been arrested or convicted of any crime. A search of the local police records and a report received from the Identification Division of the Federal Bureau of Investigation indicate that the respondent has no criminal record. An independent investigation conducted by the Service was favorable to the respondent. We conclude that the respondent has established his good moral character during the seven years preceding his application.

Prior to the amendment of October 24, 1962, the five paragraphs of section 244(a) required an applicant to establish that his deportation would result "in exceptional and extremely unusual hardship" to the alien or to his citizen or legally resident spouse, parent or child. This same language was retained in amended section 244(a) (2), but in amended section 244(a) (1), which is involved here, the language was changed to require the alien to establish that his deportation would result "in extreme hardship" to him or to his citizen or legally resident

spouse, parent or child. Although the special inquiry officer held that extreme hardship meant something less than exceptional and extremely unusual hardship, he was not satisfied that the respondent's case met this statutory requirement.

The respondent asserts that his deportation would result in extreme hardship to him and to his father. The latter has lived in this country since his lawful admission on September 20, 1922, and he was naturalized as a United States citizen on June 27, 1958. On November 6, 1961 the respondent testified that his father was partially paralyzed, and the record contains a certificate (Ex. 10) from a physician indicating that the respondent's father has been under his medical care since March 8, 1960 and is permanently disabled. From 1952 until recently, the respondent lived with his father in Los Angeles but the latter, who is 72 years old, is now in the International Guest Home in that city. The respondent testified that the cost of his father's maintenance is about $125 per month; that this is paid by Los Angeles County; that his father has no income; that he receives an old age pension of $125 which he returns to the International Guest Home; that he (the respondent) contributes about $50 monthly toward his father's support and care; and that he takes his father to the doctor each week (pp. 13-15). Apparently the respondent and his father have no close relatives in the United States. In view of the father's advanced age and physical condition, we believe it would be extremely harsh, both to the respondent and his father, to deport this alien from the United States.

The respondent states that he desires to bring his wife and son to the United States from Hong Kong. He testified that he has never been a member of the Communist Party of any country and has not been a member of any organization affiliated with the Party, and there is nothing to indicate such membership. He testified that he fears physical persecution if returned to Communist China because he is opposed to communism and fled China for that reason. However, the special inquiry officer did not direct deportation to Communist China but to the Republic of China on Formosa or to Hong Kong. The respondent also stated that he cannot return to Hong Kong because he never established residence there. The respondent has lived continuously in Los Angeles since March 1952—a period of 11 years. If the respondent were deported to Formosa or Hong Kong, we believe he would experience great difficulty in obtaining employment or in adjusting to life in a new country, particularly since he is now 42 years of age.

In view of the foregoing, it is our considered opinion that the respondent's deportation would result in extreme hardship to him and to his United States citizen father. Hence, his case meets all the statu-

225

tory requirements of section 244(a)(1) of the Immigration and Nationality Act as amended. We also believe that this case merits the exercise of the discretion to suspend deportation. Accordingly, the respondent's application for suspension will be granted.

**ORDER:** It is ordered that the order of deportation entered by the special inquiry officer be withdrawn and that the deportation of the alien be suspended under the provisions of section 244(a)(1) of the Immigration and Nationality Act as amended.

*It is further ordered* that if the Congress takes no action adverse to the order granting suspension of the alien's deportation, the proceedings be cancelled, and the alien, if a quota immigrant at the time of entry not then charged to the appropriate quota, be so charged as provided by law.

*It is further ordered* that in the event the Congress takes action adverse to the order granting suspension of deportation, these proceedings shall be reopened upon notice to the respondent.