MATTER OF LUM

In Deportation Proceedings

A-13705315

*Decided by Board September 9, 1965*

(1) Respondent, a 29-year-old native and citizen of China, who has lived in the United States since his arrival in 1951 when only 16 years of age; who has been regularly employed since leaving school in 1954; and who owns one-half interest in a restaurant which he manages and from which he averages $500 monthly has established that his deportation would result in "extreme hardship" within the meaning of section 244(a)(1), Immigration and Nationality Act, as amended, since the restaurant would have to close were he compelled to leave the country; he would lose this source of income; it is doubtful he would be able to earn a comparable income elsewhere; and he probably would suffer a substantial loss on his investment in the restaurant.

(2) Respondent's annual active duty for training in the Army National Guard of California, which was a federally recognized unit during the period of his membership, can be counted in the computation of the 24-month period of active-duty status in the Armed Forces of the United States pursuant to section 244(b) of the Act, as amended.

(3) The fact that respondent secured a United States passport in 1962 through continuation of his false claim to United States citizenship does not preclude a finding of good moral character.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(20)—No immigrant visa.

This case is before us pursuant to the special inquiry officer's certification of his decision dated March 31, 1965 in which he ordered that the respondent's deportation be suspended under section 244(a)(1) of the Immigration and Nationality Act as amended.

Discussion as to deportability: The respondent is a 29-year-old married male, native and citizen of China, who first entered the United States on September 6, 1951 at which time he secured admission as the son of a United States citizen who was actually

not his true father. The respondent obtained a United States passport in June 1962 and was absent from September 3, 1962 to December 3, 1962 when he last entered the United States and was admitted as a citizen. He was then returning to resume his residence in this country and was not in possession of an immigrant visa or other entry document required of an alien. He subsequently conceded his alienage and deportability, and we conclude that he is deportable on the charge stated above.

Discussion as to eligibility for suspension of deportation: The respondent's application for suspension of deportation was filed on September 24, 1964, and he is entitled to proceed under paragraph (1) of section 244(a) of the Immigration and Nationality Act since he is not deportable on any of the grounds referred to in paragraph (2). He is chargeable to the quota for Chinese persons which is oversubscribed and would not be able to adjust his immigration status otherwise than through suspension of deportation.

The respondent's parents died in China while he was a small child. He was not quite 16 years old when he came to the United States in 1951, and he then lived for some time with his grandfather who apparently had made the arrangements for him to come to the United States under the false identity. He attended school in Sacramento, California, until April 1954, completing the 11th grade. During the respondent's above-mentioned absence of three months in 1962, he traveled to Hong Kong where he married his wife, a native and citizen of China, who is now 20 years of age. She is attending school in Hong Kong and is supported by the respondent. They have no children.

The respondent has been physically present in the United States since September 6, 1951 with the exception of the absence of three months in 1962 and service in Germany while a member of the Army of the United States. His eligibility for suspension of deportation depends upon section 244(b) of the Act which requires honorable service for at least 24 months in an active-duty status in the armed forces of the United States. The respondent was inducted into the Army of the United States at Sacramento, California, on September 3, 1958 and was transferred to the Reserve on August 17, 1960, his total active service during this period being one year, eleven months and 15 days. The terminal date of his reserve obligation was September 2, 1964, and Exhibit 3(5) shows that he was honorably discharged from the Army of the United States on August 31, 1964. He enisted in the Army National Guard of California on December 4, 1960 and was honorably discharged on November 1, 1963 pursuant to his request for transfer to the Army Reserve. During his serv-

ice with the Army National Guard of California, the respondent had 15 days of active duty for training in 1961, 1962, and 1963, a total of 45 days. If this 45 days can be added to the respondent's active service of twenty-three and one-half months, he would then have more than the 24 months specified in section 244(b). It seems clear that his service in the National Guard was a fulfillment of his reserve obligation to the United States.

In *Matter of Peralta*, Int. Dec. No. 1290 (1963), we held that annual active training duty as a member of the Reserve can be considered active duty in the armed forces of the United States under section 244 (b) since the definition of "active duty" in 10 U.S.C. 101(22) specifically includes "annual training duty". The special inquiry officer was of the opinion that the same rule should apply in this respondent's case although the annual training duty occurred while the respondent was a member of the Army National Guard of California. However, that officer certified the case to this Board for consideration of the question, having found the respondent fully qualified otherwise for suspension of deportation.

One of the reserve components of the armed forces of the United States, as set forth in 10 U.S.C. 261, is "The Army National Guard of the United States". 10 U.S.C. 101(10) defines "Army National Guard" as that part of the organized militia of the several states which meets certain requirements including that it be "federally recognized". Exhibit 7 shows that the California Army National Guard unit, of which the respondent was a member, was federally recognized during the period of his membership. 10 U.S.C. 101(11) defines "Army National Guard of the United States" as meaning "the reserve component of the Army all of whose members are members of the Army National Guard."

In view of the foregoing, we are satisfied that the respondent's annual active duty for training in the Army National Guard of California does not differ from similar training in the Army Reserve. In accordance with our decision in *Matter of Peralta, supra*, we hold that the respondent has served honorably for over 24 months in an active-duty status in the armed forces of the United States as required by section 244(b) of the Immigration and Nationality Act, and that the requirement of continuous physical presence is not applicable in his case.

The respondent has lived in Sacramento, California, from the time of his arrival in the United States in 1951, and he has been regularly employed since leaving school in 1954. He now owns a one-half interest in a restaurant in Sacramento in which he invested

$10,000 in October 1963. He manages the restaurant and his partner is the cook. The respondent averages $500 monthly from this business. In addition to his interest in the restaurant, the respondent has cash assets in the sum of $1,000. He has testified that the restaurant would be unable to continue and would have to close if he were compelled to leave the United States. He would lose this source of income and it is doubtful that he would be able to earn a comparable income elsewhere. In addition, he would probably suffer a substantial loss on his investment in the restaurant. In view of the circumstances mentioned and the fact that the respondent has lived in the United States since 1951, when he was only 16 years of age, we conclude that he meets the statutory requirement relating to proof that his deportation would result in extreme hardship to him.

The respondent stated that while working in a market in 1957 he had sold wine to a customer who turned out to be a minor and that a fine was paid by his employer. A search of the local police records and a report received from the Identification Division of the Federal Bureau of Investigation fail to disclose any other arrest or criminal record relating to the respondent. The respondent has stated that he has not been a member of the Communist Party or any affiliated organization, and an independent investigation conducted by the Service was entirely favorable to him.

Section 244(a)(1) of the Immigration and Nationality Act requires the alien to prove that he is, and had been during the seven years preceding his application, a person of good moral character. In *Matter of Peralta*, we held that an alien, who meets the requirements of section 244(b), is not required to establish good moral character for a specified period except from the date of the application for suspension of deportation until its adjudication although conduct prior thereto may be considered. Hence, we conclude that the fact that the respondent secured a United States passport in 1962, through continuation of his false claim of United States citizenship, does not preclude a finding of good moral character, and we hold that he has established good moral character for the necessary period. Because of the favorable factors mentioned above, including the respondent's honorable service in the Army of the United States, we also hold that the respondent's case merits suspension of deportation in the exercise of discretion. Accordingly, we approve the action of the special inquiry officer in granting the respondent's application.

ORDER: It is ordered that the deportation of the alien be suspended under the provisions of section 244(a)(1) of the Immigration and Nationality Act as amended.

*It is further ordered* that, if the Congress takes no action adverse to the order granting suspension of the alien's deportation, the proceedings be cancelled, and the alien, if a quota immigrant at the time of entry and not then charged to the appropriate quota, be so charged as provided by law.

*It is further ordered* that, in the event the Congress takes action adverse to the order granting suspension of deportation, these proceedings shall be reopened upon notice to the respondent.