**Ioannis Georgios ASIMAKOPOULOS and Maria Asimakopoulos, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 26616.**

United States Court of Appeals, Ninth Circuit.

July 30, 1971.

Joseph S. Hertogs (argued), of Jackson & Hertogs, San Francisco, Cal., for petitioners.

Stephen M. Suffin, Atty., I.N.S. (argued), James L. Browning, U. S. Atty., San Francisco, Cal., Joseph Surreck, Regional Atty., San Pedro, Cal., John N. Mitchell, Atty. Gen. of U. S., Washington, D. C., for respondent.

Before DUNIWAY, CARTER and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Petitioners seek review of a decision of the Board of Immigration Appeals (the "Board") denying their petition for suspension of deportation under 8 U.S.C. § 1254(a) (1). We reverse and remand the cause to the Board for two reasons: (1) the Board applied a standard of classification of aliens eligible for suspension that is not authorized by section 1254(a) (1); (2) the Board failed to exercise the discretion that Congress committed to it to determine petitioners' eligibility for suspension of deportation by section 1254(a) (1). We overrule the contrary holding of Matter of Lee (B.I.A.1966) 11 I. & N.Dec. 649 upon which the Board relied in deciding this case.

Petitioners are husband and wife. The husband, a 31-year-old Greek national, entered the United States in June 1961 as a temporary visitor. In June 1962, he assumed the status of a student. He became deportable because he went to work for a salary while he was a student. He was not deported, however, and he later was classified as a sixth preference alien. In 1967, he received a waiver of the exchange visitor foreign residence requirement under 8 U.S.C. § 1182(e). He and his wife were married shortly after he first became deportable. She had entered the United States as a temporary visitor in March of 1962. In 1965, she was found deport-

able for remaining beyond the time limitation placed on her temporary stay. Petitioners have two young sons both of whom were born in the United States. A succession of private bills to make the husband a permanent resident were introduced in Congress during the period 1962 through 1967. All of the bills failed.

In 1969, petitioners successfully moved to reopen the deportation proceedings in order to apply for suspension of deportation under 8 U.S.C. § 1254(a) (1). The special inquiry officer and the Board denied relief. Neither the special inquiry officer, nor the Board, nor the Service has ever questioned the fact that petitioners have met all of the requirements for eligibility for suspension of deportation set forth in section 1254(a) (1), which section provides that

> "the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—
>
> (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.
> * * * * *"

Denial of relief was predicated on Matter of Lee, *supra*, holding that the Board would not exercise its discretion in favor of an alien applying for suspension of deportation who had been in this country in a protected status unless the alien could show "particularly strong equities" favoring him. The decision was based on a portion of a 1965 report of the House Committee of the Judiciary concerning a resolution opposing the granting of permanent residence to certain aliens under section 1254(c). (H. R.Rep.No. 1167 (1965) 89th Cong., 1st Sess.) The resolution was passed under the authority delegated to both the House and the Senate to bar suspension of any alien's deportation (8 U.S.C. § 1254(c) (2)), after receipt of the report of the Attorney General relating the pertinent facts and law in respect of each alien whose deportation has been suspended (8 U.S.C. § 1254(c) (1)).

Among the aliens who were the subject of the 1965 Committee report were persons who had spent the greater part of the seven-year period in a legal status or protected status. The Committee commented on those aliens, stating:

> "[A] variety of delaying tactics have been utilized * * * to meet the minimum requirements for suspension of deportation. The committee has expressed its disapproval of those cases * * *. Such cases include but are not limited to visitors, students, diplomatic employees, beneficiaries of private bills, and aliens admitted to the United States to prosecute frivolous claims to citizenship."

In *Lee*, the Board concluded that the House Committee report was equivalent to a congressional directive that aliens eligible for discretionary relief from deportation under section 1254 should be divided into two classes as to which different burdens of proof would be imposed: (1) those aliens who had spent a greater part of their seven years in a protected status upon whom the burden was placed to prove not only the "extreme hardship" specified in section 1254, but in addition "particularly strong equities," and (2) all other aliens upon whom the burden was placed simply to prove "extreme hardship."

Unlike the Board in *Lee*, we do not construe the Committee's report as an

effort by the Committee to tell the Attorney General how he should exercise the discretion delegated to him by section 1254(a) (1). Rather, it is an explanation for the Committee's having exercised the discretion committed to it by section 1254(c) to reject the Attorney General's prior decision to suspend deportation of certain aliens. Section 1254(c) authorizes congressional review of the Attorney General's decision in these cases, but nothing in section 1254(c) permits either the Senate or the House to prescribe the standards by which the Attorney General shall exercise his judgment in making the decision initially delegated to him.

We are mindful that the Board should consider congressional policies in determining whether to grant discretionary relief. (United States ex rel. Hintopoulos v. Shaughnessy (1957) 353 U.S. 72, 78–79, 77 S.Ct. 618, 1 L.Ed.2d 652; United States ex rel. Tanfara v. Esperdy (2d Cir. 1965) 347 F.2d 149, 152.) However, House Report 1167 is not a statement of congressional policy. The House Judiciary Committee does not speak for the whole Congress, particularly when the policies it announces run counter to policies manifested in the congressional enactments that made available the discretionary relief sought by petitioners.

Even if we construed the Committee's report as an expression of the Committee's intent to create a classification of eligible aliens binding the Attorney General, we could not sustain the Board's holding in *Lee*. Section 1254 does not authorize the creation of that classification by the Attorney General or by the unilateral act of either the Senate or the House. The Committee's intent to impose the classification falls before the language of section 1254(a) (1).

■ We overturn *Lee* and the decision of the Board in this case on an additional ground. Although eligibility for suspension does not compel the granting of the requested relief (Fong Choi Yu v. I&NS (9th Cir. 1971) 439

F.2d 719), eligibility does trigger the exercise of discretion. (United States ex rel. Hintopoulos v. Shaughnessy, *supra*, 353 U.S. at 77, 77 S.Ct. 618, 1 L.Ed.2d 652.) The standard announced in Matter of Lee effectively precludes the exercise of discretion in many cases in which the applicant would otherwise qualify for relief. The Board's failure to exercise discretion is reversible error. (United States ex rel. Accardi v. Shaughnessy (1954) 347 U.S. 260, 266–268, 74 S.Ct. 499, 98 L.Ed. 681.) Accordingly, reliance on a test that prevents the exercise of discretion is also reversible error. (*See* Loza-Bedoya v. I&NS (9th Cir. 1969) 410 F.2d 343, 346.) We do not express any opinion about the manner in which the Attorney General or his delegates should exercise the discretion committed to him.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.