**Jong Ha WANG and Kyung Hwa Wang, Petitioners,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 78–1243.

United States Court of Appeals, Ninth Circuit.

June 4, 1980.

Roger J. Gleckman, Gleckman & Prescott, Los Angeles, Cal., for petitioners.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for respondent.

Before WRIGHT, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON, HUG and TANG, Circuit Judges.*

CHOY, Circuit Judge:

The Wangs petition for review of the denial of their motion to reopen deportation proceedings to allow them to apply for suspension of deportation under § 244 of the Immigration and Nationality Act (the Act), 8 U.S.C. § 1254. The only issue raised by the petition is whether in their motion to reopen the Wangs made a prima facie showing of extreme hardship as required by the Act. We chose to take this case en banc because there has been some confusion as to what an alien is required to show and what the Board of Immigration Appeals (the Board) is required to consider in cases where the questions are whether the alien is (1) eligible for and (2) merits suspension of deportation.

In moving to reopen deportation proceedings to apply or in applying for suspension of deportation an alien must present facts that, if proved, would make him eligible for relief. In ruling on a motion or on an application the Board must consider all of the facts of the case and then exercise its discretion.

We reverse the order of the Board and remand for a hearing on the Wangs' eligibility for suspension of deportation and for the exercise of the Board's discretion.

## I. Statement of the Case

The Wangs, husband and wife, are natives and citizens of Korea. They entered the United States as nonimmigrant treaty traders in January 1970 authorized to remain for six months. They have two United States citizen children, one born in March 1970, and one born in December 1973.

In November 1974, the Wangs were found deportable at a deportation hearing and granted voluntary departure on or before February 1, 1975. In July 1975, the deportation proceedings were reopened to allow the Wangs to apply for adjustment of status under § 245 of the Act, 8 U.S.C. § 1255. The immigration judge denied the applications for adjustment of status, and two years later the Board dismissed the appeal.[1]

In December 1977, ten months after accruing seven years of continuous physical presence in the United States, the Wangs filed a second motion to reopen their deportation proceedings, this one seeking suspension of deportation under § 244 of the Act, 8 U.S.C. § 1254. Finding that the Wangs had failed to make a prima facie showing of one of the requirements of § 244, extreme hardship, the Board denied the motion to reopen. The Wangs petition for review of that decision.

## II. Standard of Review

Section 244(a) provides in part:

[T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable . . .; has been physically present in the United States

---

* Judges Ely and Trask heard argument in this case but subsequently thereto took senior status and did not participate in this decision. See United States v. American-Foreign Steamship Corp., 363 U.S. 685, 691, 80 S.Ct. 1336, 1340, 4 L.Ed.2d 1491 (1960).

Chief Judge Browning did not participate in this decision.

1. The basis for the application for adjustment of status was that Mr. Wang had received an alien labor certificate pursuant to § 212(a)(14) of the Act, 8 U.S.C. § 1182(a)(14), because he had been offered a job with a wig manufacturing plant in Utah. The application was denied because there were no visas available at the time of the hearing and because the Wangs had not moved to Utah for Mr. Wang to begin work. Upon motion by the Wangs, their petition to review the Board's denial of adjustment of status has been dismissed.

for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship[2] to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

In this statute the discretion granted to the Attorney General is twofold. The Attorney General has the discretion to determine whether an alien is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship" and the discretion to determine whether to suspend deportation of an alien who meets all of the requirements of the statute. An additional level of discretion is purportedly created by the regulations, i. e., the discretion to reopen deportation proceedings. See 8 C.F.R. §§ 3.2, 242.22 (1979).

■ An alien may move to reopen deportation proceedings to seek discretionary relief where circumstances change after a deportation order is entered. Urbano de Malaluan v. INS, 577 F.2d 589, 592 (9th Cir. 1978). The Board may not grant such a motion unless it is based upon material new facts. 8 C.F.R. § 3.2 (1979). The Board must determine whether the alien has set forth sufficient facts in his moving papers to make a prima facie case of eligibility for relief. Urbano de Malaluan v. INS, 577 F.2d at 592–93.

■ When the Board determines that a prima facie case has not been shown and denies the motion to reopen, review by this court is limited to the question whether the Board abused its discretion. Id.; Lee v. INS, 550 F.2d 554, 555 (9th Cir. 1977). We have taken the position that "[w]hen an application for suspension of deportation establishes a prima facie case of eligibility, it is an abuse of discretion to deny a motion to reopen deportation proceedings." Choe

2. Under § 244(a)(1) of the Immigration and Nationality Act of 1952, suspension of deportation was to be granted where the alien was able to demonstrate "exceptional and extremely unusual hardship" to himself or to his spouse, parent, or child who was a citizen or a lawful permanent resident alien. Act of June 27, 1952, Pub.L. No. 82–414, 66 Stat. 214. The relief was intended to be limited to situations where the hardship would be unusual *and* where deportation would be unconscionable. S.Rep. No. 1137, 82d Cong., 2d Sess. 25 (1952). In determining whether to grant the relief, the Board considered: (1) the length of the alien's residence, including manner, time, and purpose of entry; (2) family ties in the United States and abroad; (3) the possibility of obtaining a visa abroad; (4) the financial burden on the alien to go abroad and obtain a visa; and (5) the health and age of the alien. In re S, 5 I. & N. Dec. 409 (1953); see House Judiciary Comm., 84th Cong., 1st Sess., Report on the Administration of the Immigration and Nationality Act 47 (Comm. Print 1955). Several, but not all, of the factors were required for a successful showing of hardship. In re S, 5 I. & N. Dec. at 410.

In 1962 the requirement of "exceptional and extremely unusual hardship" was amended to the current requirement of "extreme hardship." Act of Oct. 24, 1962, Pub.L. No. 87–885, § 4, 76 Stat. 1248. The distinction between these re-

quirements has not been clearly defined, but it is generally agreed that Congress intended to lessen the degree of hardship required for suspension of deportation. See In re Hwang, 10 I. & N. Dec. 448, 452 (1964); In re Louie, 10 I. & N. Dec. 223, 225 (1963); 2 C. Gordon & H. Rosenfield, Immigration Law & Procedure § 7.9d(5), at 7–161 (1979).

In 1975, when proposing an "unusual hardship" standard for certain adjustment-of-status cases, the House Judiciary Committee compared that standard with the standard of "extreme hardship" under § 244(a)(1) of the Act. (The Committee's proposal was reported to the full House, but no action was taken prior to adjournment.) The Committee suggested that similar criteria would be applied to guide the use of discretion under the two statutes and that in addition to those factors previously considered by the Board under § 244 the following factors also should be considered: (1) the conditions in the country to which the alien is returnable—economic and political; (2) the alien's financial status—business and occupation; (3) the possibility of other means of adjustment of status; (4) whether the alien is of special assistance to the United States or to the community; (5) the alien's immigration history; and (6) the alien's position in the community. H.R.Rep. No. 506, 94th Cong., 1st Sess. at 17 (1975); see In re Anderson, Interim Dec. # 2669, at 2–3 (B.I.A.1978).

*v. INS*, 597 F.2d 168, 170 (9th Cir. 1979) (citing *Urbano de Malaluan v. INS*, 577 F.2d at 593). We reaffirm that position.

### III. *Extreme Hardship*

In the present case the parties agree that the Wangs have established a prima facie case of seven years' presence in the United States and good moral character during that time. The sole question is whether the Wangs have made a prima facie showing of extreme hardship.

■ Almost every alien who is deported will suffer some hardship. The statute was not designed to provide relief from deportation for every alien of good moral character who has been in this country for seven years. Nonetheless, the statute should be liberally construed to effectuate its ameliorative purpose, *see Wadman v. INS*, 329 F.2d 812, 817 (9th Cir. 1964), so that suspension of deportation will be granted to the alien for whom the hardship from deportation would be different and more severe than that suffered by the ordinary alien who is deported.

### A. *Prima Facie Case*

■ In a motion to reopen an alien must allege new facts that are supported by affidavits or other evidentiary material. 8 C.F.R. § 3.2 (1979); *Wosough-Kia v. INS*, 597 F.2d 1311, 1312 (9th Cir. 1979) (quoting 8 C.F.R. § 3.8 (1979)). Conclusory allegations alone will not trigger any responsibility to reopen and afford the alien a hearing. "Notice" pleading will not suffice. *See Tenorio-Martinez v. INS*, 546 F.2d 810, 812

(9th Cir. 1976). Moreover, the facts must be such as would, if proved, establish eligibility and potentially affect the result of the proceedings. *See Ballenilla-Gonzalez v. INS*, 546 F.2d 515, 520 (2d Cir. 1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977); 8 C.F.R. § 3.2 (1979); 1 C. Gordon & H. Rosenfield, Immigration Law & Procedure § 1.10g, at 1–82 (1979).

■ We believe that equities arising when the alien knows that he is in this country illegally, *e. g.*, after a deportation order is issued, are entitled to less weight than are equities arising when the alien is legally in this country. That is not to say that facts arising after a deportation order has been issued are to be totally discounted, however. Rather, we feel that it is necessary for the Board to consider *all* of the surrounding circumstances. The nature of each fact and the underlying motivation that caused any change in circumstances undoubtedly will affect the weight to be given to any fact supporting the alien's application for relief from deportation.[3] Some facts in and of themselves establish extreme hardship; other facts establish extreme hardship only in conjunction with other factors, if at all. Some facts raise a suspicion that an alien has a calculated purpose to delay or completely to avoid deportation, *see, e. g., Der-Rong Chour v. INS*, 578 F.2d 464 (2d Cir. 1978), *cert. denied*, 440 U.S. 980, 99 S.Ct. 1786, 60 L.Ed.2d 239 (1979), whereas other facts demonstrate only that life has not stopped for the alien merely because he is in the country illegally.[4] Such facts should be given different weights, and those that are less severe or more calculated should receive less weight.

---

**3.** Because of the potential hardship involved, it may be more appropriate to consider some issues, such as intent, at a hearing rather than from the moving papers, unless the alien's purpose is so clear that no hearing is required. Where there is a close question it is better to err in favor of granting the hearing than to deny a valid claim.

**4.** For instance, we do not require that an alien be *legally* in the United States for seven years to meet the eligibility requirement under § 244,

8 U.S.C. § 1254, *see Urbano de Malaluan v. INS*, 577 F.2d 589 (9th Cir. 1978) (alien who remained six years after being found deportable impliedly not precluded from seeking suspension of deportation), but only that he be in the country for seven years, *but cf. Kamheangpatiyooth v. INS*, 597 F.2d 1253 (9th Cir. 1979) (alien who temporarily left country with intent to return not precluded from seeking suspension of deportation).

■ It should be noted that the "extreme hardship" portion of the statute is written in the disjunctive rather than in the conjunctive. Thus, an alien must allege facts that demonstrate extreme hardship to only one of those persons mentioned in the statute: i. e., extreme hardship to himself, to his spouse, to one of his parents, or to one of his children, so long as the spouse, parent, or child[5] is a United States citizen or an alien admitted for permanent residence. In determining whether the alien has set forth a prima facie case for eligibility the Board should consider the aggregate effect of deportation on all such persons when the alien alleges hardship to more than one. However, a showing of extreme hardship to any one is sufficient to establish eligibility.[6]

■ The determination whether a prima facie showing of extreme hardship has been made, like the post-hearing discretionary determinations whether extreme hardship actually exists and whether, if it does, deportation should be suspended, "is not bound by hard and fast rules; each case must be decided on its own facts," *Banks v. INS*, 594 F.2d 760, 762 (9th Cir. 1979). The Board should avoid drawing fine lines of distinction, and also should avoid acting inconsistently with guidelines provided by earlier decisions. *See, e. g., Urbano de Malaluan v. INS*, 577 F.2d at 595.

■ Although an alien who sets forth a prima facie case of eligibility for relief must be afforded a hearing, the mere fact that a prima facie case is made does not preordain the result of the hearing. Proof of eligibility does not compel that relief be granted, *Fong Choi Yu v. INS*, 439 F.2d 719 (9th Cir. 1971), but only triggers the exercise of the Attorney General's discretion to determine whether the alien merits the relief, *see Asimakopoulos v. INS*, 445 F.2d 1362, 1365 (9th Cir. 1971). And, of course, a finding that the alien has alleged a prima facie case of eligibility does not dictate a finding that the alien actually has established eligibility, but it does require that the Board hold a hearing to thoroughly consider all of the facts supporting the alien's claim.

### B. Hardship in this Case

The Wangs claimed that their deportation would result in extreme hardship both to themselves and to their citizen children. They claimed first that their children would

---

**5.** Cf. *Tovar v. INS*, 612 F.2d 794, 797 (3d Cir. 1980) (court held that grandmother could claim extreme hardship to citizen grandchild who lived with her because their relationship so closely resembled that of parent and child).

**6.** We reject any suggestion that a showing of extreme hardship requires that the alien demonstrate hardship to at least two of the categories of persons enumerated in § 244(a)(1).

"The language of a statute is the best and most reliable index of its meaning, and where language is clear and unequivocal it is determinative of its construction." *Monte Vista Lodge v. Guardian Life Ins. Co.*, 384 F.2d 126, 128 (9th Cir. 1967), *cert. denied*, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1142 (1968), *quoted in Smith v. Califano*, 597 F.2d 152, 155 (9th Cir. 1979). Moreover, "[t]he terms of the statute must be given their usual meaning, unless they are specifically defined otherwise within the statute." *Rhodes v. Republic Nat'l Life Ins. Co.*, 501 F.2d 1213, 1217 (9th Cir. 1974), *cert. denied*, 420 U.S. 928, 95 S.Ct. 1126, 43 L.Ed.2d 398 (1975); *see Burns v. Alcala*, 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–1185, 43 L.Ed.2d 469 (1975); 2A C. Sands, [Sutherland on] Statutes and Statutory Construction § 47.28 (4th ed. 1973). The usual meaning of the word "or" is that it "indicates alternatives." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975); 1A C. Sands, [Sutherland on] Statutes and Statutory Construction § 21.14, at 91 n.1 (4th ed. 1972). Thus, we must read § 244(a)(1) as meaning that a showing of hardship to any one member of an enumerated group, if of a sufficient quantum, may be "extreme hardship" within the meaning of the statute.

An alien also may satisfy the statutory requirement by showing that the aggregate hardship to two or more of those persons mentioned in the statute is extreme even if the hardship as to any one person would not be extreme viewed in isolation. *See Urbano de Malaluan v. INS*, 577 F.2d 589, 594–95 (9th Cir. 1978); *In re Bodden*, File Nos. A20 978 896/898, at 3 (B.I.A. August 9, 1977) (unpublished disposition).

suffer serious economic, educational, and cultural difficulties if they were forced to leave this country with their parents. The Board responded that "possible inconvenience to those children is not a hardship of the degree contemplated under section 244(a)(1)," and that there was "no evidence of 'extreme hardship.' "

We believe that the Board erred. The citizen children are within those persons mentioned in § 244(a)(1); potential hardship to them must be considered by the Board in ruling on an application for suspension of deportation. *See Urbano de Malaluan v. INS*, 577 F.2d at 594. The severity of such hardship is difficult to discern without a hearing. *Id.*

■ An alien cannot gain favored status merely because he has a child who is a United States citizen. *E. g., Choe v. INS*, 597 F.2d at 170. That is, the mere existence of a citizen child, without more, neither validates an otherwise invalid claim of extreme hardship to the alien nor automatically establishes extreme hardship to the child. Rather, the Board must focus upon whether the parent's deportation will in fact cause the child extreme hardship.[7]

■ The Wangs have two children of school age (ten and six), both of whom were born in this country before deportation proceedings were brought against their parents. Both children have spent their entire lives in this country; they do not speak Korean. Under these circumstances we do not believe that the Board should summarily have dismissed the Wangs' claim of hardship to their children. The effect that the deportation of the parents would have on the Wang children should be determined only after a hearing. *See Urbano de Malaluan v. INS*, 577 F.2d at 594.

The Wangs also claimed that deportation would impose a severe economic hardship on themselves and on their children. In 1974 the Wangs purchased a home, valued at $60,000 as of December 1977. They own and operate a dry-cleaning business with a fair market value of approximately $75,000. In late 1977 they also listed other assets totalling approximately $45,000, and liabilities totalling $81,000. They claimed that if required to leave the country they would be forced to liquidate their assets to their detriment.

■ The Board responded, "It is well settled that a mere showing of economic detriment is not sufficient to establish extreme hardship within the meaning of section 244(a)(1). *Pelaez v. INS*, 513 F.2d 303 (5 Cir. 1975), cert. denied, 423 U.S. 892 [96 S.Ct. 190, 36 L.Ed.2d 124] (1975); *Matter of Kim*, Interim Decision 2318 (BIA 1974)." True, this court has noted that "[e]conomic loss alone is insufficient to sustain a finding of extreme hardship." *E. g., Choe v. INS*, 597 F.2d at 170; *Kasravi v. INS*, 400 F.2d 675, 676 (9th Cir. 1968). However, we have also said that "[t]his does not mean that this factor is to be entirely eliminated from consideration. Certainly this can be considered along with other factors in determining whether the statutory requirement of 'extreme hardship' has been met." *Urbano de Malaluan v. INS*, 577 F.2d at 594; accord, *Choe v. INS*, 597 F.2d at 170.

Economic loss is not the same as economic hardship. An alien who is forced to sell property because he is being deported, whether he shows a financial loss or a profit, might, nonetheless, suffer hardship. Moreover, where an alien is forced to sell a business that has taken him years of hard work to establish, the hardship to the alien

---

7. Some of the factors to be considered in determining whether the effects of the parent's deportation are sufficiently deleterious are medical problems, *see Banks v. INS*, 594 F.2d 760, 762 (9th Cir. 1979); the age of the child and the effect on the child's education, *see Choe v. INS*, 597 F.2d 168, 170 (9th Cir. 1979); *Urbano de Malaluan v. INS*, 577 F.2d at 595 n.5; separa- tion from other family members in the United States, *see Choe v. INS*, 597 F.2d at 170; *Urbano de Malaluan v. INS*, 597 F.2d at 593–95; *Yong v. INS*, 459 F.2d 1004, 1005 (9th Cir. 1972); and the difficulty of adjusting to a new country, *see Choe v. INS*, 597 F.2d at 170; *Urbano de Malaluan v. INS*, 577 F.2d at 595.

cannot be measured by any dollar amount. In fact, the Board has been receptive to arguments that the loss of an alien's independent business is extreme hardship. *E. g., In re Lum*, 11 I. & N. Dec. 295, 297–98 (1965); *In re Z*, 5 I. & N. Dec. 419, 420 (1953) (under 1952 Act). *See also Lee v. INS*, 550 F.2d at 559 (Takasugi, J., dissenting). It is not our intention to "elevate thrift and industry above immigration policy." *Id.* at 556 (majority opinion). However, we do feel that it is necessary for the Board to consider the total potential effect of deportation on the alien and his family and that where a showing of economic hardship is combined with some other substantial hardship the Board should afford the alien a hearing on the issue of extreme hardship.[8]

 We need not hold that either the Wangs' showing regarding their children or the Wangs' anticipated economic setback alone constitutes a prima facie case of extreme hardship. We believe, though, that both together establish the requisite prima facie case, and that, if the Wangs establish at the hearing that they will in fact suffer extreme hardship upon deportation, the Board might be persuaded to exercise its discretion favorably.[9] Therefore, we remand to the Board for more thorough consideration of both factors. We do not preclude the possibility that upon further examination the Board, in the sound exercise of its discretion, may find that either hardship alone is extreme and warrants relief or that both combined are hardships sufficient to warrant relief.[10]

We admonish the Board that the decision rendered subsequent to this hearing, or for that matter any decision, should contain a discussion of the evidence and the reasons for granting or denying the alien's request. *See* 8 C.F.R. §§ 103.3, 242.18(a) (1979). Only by knowing the basis for the Board's decision can we adequately review it.

Insofar as *Perales v. INS*, 575 F.2d 1293 (9th Cir. 1978), and *Lee v. INS*, 550 F.2d 554, are inconsistent with this opinion, they are overruled.

REVERSED and REMANDED for further proceedings consistent with this opinion.

SNEED, Circuit Judge (with whom KENNEDY, Circuit Judge, concurs) (Concurring only with the result to reverse and remand and dissenting from the opinion of the majority):

The most superficial reader of the majority's opinion will ask himself why the Wangs either (1) automatically should not be entitled to suspension of their deportation proceedings upon a showing in the hearing that the facts are as set forth in their motion or (2) should not be entitled to a hearing at all. To provide a hearing to establish the prima facie case set forth in the motion that will *not* compel the Attorney General to suspend the deportation proceedings strongly suggests that the hearing serves primarily objectives not related to the issue of suspension. There exists another possibility, however. It is that the refusal to reopen is because the Board of Immigration Appeals

---

**8.** *Compare Banks v. INS*, 594 F.2d 760 (Board granted motion to reopen where allegations of medical and educational hardship to citizen child and of required sale of only personal property), *with Lee v. INS*, 550 F.2d 554 (9th Cir. 1977) (Board denied motion to reopen where allegations of general hardship to preschool citizen child and of loss of alien's business).

**9.** It is rare that the facts of a case establish that the alien will suffer extreme hardship upon deportation and that the Board nonetheless refuses to grant the requested relief, but it is not necessarily an abuse of discretion for the

Board to do so. *See United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957); *Nee Hao Wong v. INS*, 550 F.2d 521 (9th Cir. 1977).

**10.** In concluding that the Wangs' showing of hardship warrants a hearing, we do not foreclose consideration upon remand of other factors present in this case. *See generally* notes 2 and 5 *supra*; 2 C. Gordon & H. Rosenfield, Immigration Law & Procedure § 7.9e, at 7–167 to 7–170 (1979).

(BIA) does not accept the facts to be as alleged in the motion. Under those circumstances to deny the alien a hearing is contrary to ordinary notions of fair play and due process.

The difficulty with this case is that it is not clear why the BIA refused to reopen the deportation proceedings. After summarizing the facts set forth in the Wangs' motions the BIA concluded that a "prima facie showing" of "extreme hardship" was not made. Neither what was lacking nor the precise nature of a "prima facie" case was set forth. Moreover, neither the statute nor the regulations mention the "prima facie" concept.[1] Perhaps the concept is used by the BIA to mean that even accepting the movant's facts as true "extreme hardship" has not been shown. Equally plausible, however, is the possibility that there is sufficient doubt about the movant's facts on the part of the BIA to preclude the existence of a "prima facie" case. Or perhaps both of these possible meanings are mingled with the result that the BIA means when it denies the existence of a prima facie case that it doubts whether certain facts exist and that even if they do a showing of extreme hardship would not be made out. Given the tendency of the human mind to mix categories when convenience is served, the latter possibility cannot be regarded as unlikely.

The course this court should pursue on review depends in large measure upon which of these possibilities accurately reflects the intention of the BIA in a given case. Were its refusal based solely on the belief that the facts as alleged are insufficient to constitute hardship under section 244(a)(1), the issue before us should be merely whether this conclusion reflects an abuse of discretion on the part of the Attorney General. A hearing should be unneces-

sary because the alien's version of the facts has been accepted by the INS. A hearing to establish what is admitted serves no purpose. Under these circumstances the court might desire to establish standards by which the Attorney General's exercise of discretion should be judged for the purpose of determining whether an abuse occurred. Again a hearing, such as the majority directs, is not necessary for this purpose. Were this case in that posture I would conclude the Attorney General has not abused his discretion in refusing to reopen deportation proceedings.

On the other hand, were the refusal to reopen based wholly, or even in material part, on an assertion or belief that the facts are other than the alien asserts, it would be, I believe, an abuse of discretion not to reopen deportation proceedings for a hearing. As previously indicated it is not clear on what ground the refusal to reopen was based in this case. Where facts are disputed a hearing is necessary to permit the Attorney General's discretion to be exercised wisely and on the basis of all the relevant facts. I repeat, however, this is not necessary when the facts are admitted and the alien has been given a full and fair opportunity to set forth all the relevant facts in the motion to reopen.

A possible objection to the above reasoning is that under circumstances such as in this case a hearing is necessary not because the INS contests the facts, but merely to provide an opportunity at which the cold facts recited in the motion can be given life and color by means of an appearance by the alien and his family and their personal plea to the official presiding over the hearing. The difficulty with this is not that it would not accomplish that purpose, but that there is no basis for it in either the law or the regulations. *See* 8 C.F.R. §§ 3.2, 242.22.

---

1. How the prima facie case test came to govern motions to reopen deportation proceedings has never been adequately explained. The standard appeared suddenly in a pair of 1972 BIA decisions—*In re Sipus*, 14 I. & N. Dec. 229 and *In re Lam*, 14 I. & N. Dec. 98, where the BIA

neither cited authority nor provided a rationale in support of it. The BIA offered no explanation of what the prima facie case test actually meant, and no guidance as to when it would be applied.

Nor is it required by the dictates of fair play. It must be remembered that in these cases we are concerned with an alien held to be deportable on the basis of all the facts save those upon which the motion to reopen relies. To permit a disposition of the motion without a hearing when the facts are not in dispute is not unfair. This court disposes of many important issues in precisely this fashion.

An additional difficulty with the notion of a hearing to permit one last face to face encounter between the alien and the Attorney General's representative is that if it is useful under the circumstances of this case I can see no reason why it should not also be available when any material fact, not available at the time of the deportation hearing comes into existence. To allow hearings only upon a showing of a "prima facie case," which case does not obligate the Attorney General to suspend deportation proceedings, discriminates against many who also would like one more hearing. The answer, of course, is that to allow everyone a hearing would slow the administrative process impermissibly. Only the few, the identity of which this court largely will determine, can be permitted the boon of a hearing. I understand this answer, but I cannot accept it.

This brings me to my last point. It is that the majority, despite their explicit denial, are, in my opinion, indicating to the Attorney General that the showing by the Wangs is sufficient to require that their deportation be suspended in the absence of some substantial new reason to do otherwise and that the burden of establishing that reason is upon the Attorney General. I believe this extends our writ beyond its proper scope and deprives the Attorney General of a substantial portion of the discretion which section 244(a) vests in him.

The judicial process is quite unsuited to deal dispositively with the many issues arising from our immigration statutes and policies. Its nature limits our vision to the alien before us and conceals from us the problems of the multitudes of aliens, both within and without the Nation, who wish to reside legally within the United States. What in the judicial process may appear to be just may in fact be gross preferential treatment when viewed in its total setting. Only the administrative process can provide the overview of all relevant facts and policies upon which proper justice must rest.

I acknowledge that the administrative actions of the INS and the BIA do not always inspire the casual observer with confidence. This is regrettable. Our sporadic forays into the area, blinded as we must be by the nature of the judicial process, are not likely to improve the situation. Our task should be to insure that the Attorney General's procedural rules are fair and that the exercise of his discretion is not abused. Our review of the manner in which he exercises his discretion should be, for reasons already stated, quite narrow. Put differently, his discretion should be broad. In my view the majority is unwisely narrowing that discretion in an opinion that purports to deal only with a procedural matter. Thus, I refuse to join in the majority opinion. The proper course would be to reverse the Board's order and to remand for a determination by the Board whether its refusal to reopen was based upon its rejection in whole, or in material part, of the alien's additional facts as set forth in his motion to reopen or whether it represented a genuine exercise of discretion on behalf of the Attorney General pursuant to section 244(a)(1). Following this determination, and whatever additional action the Attorney General takes with respect to this determination, the Wangs should again be permitted to petition this court for review of any adverse action.

GOODWIN, Circuit Judge, dissenting.

The majority opinion is likely to shift the administration of hardship deportation cases from the Immigration and Naturalization Service to this court. The majority purports to hold only that the I&NS must

grant the alien in this case a hearing. The opinion goes on, however, to supply a fairly strong indication how the hearing should turn out.

By using the majority opinion as a blueprint, any foreign visitor who has fertility, money, and the ability to stay out of trouble with the police for seven years can change his status from that of tourist or student to permanent resident without the inconvenience of immigration quotas. This strategy is not fair to those waiting for a quota.

The operations of the I&NS in hardship cases may or may not have followed the intent of Congress. The I&NS may not have satisfied the judges of this court; but I do not believe that judicial dissatisfaction with past performance justifies the change in direction which this court is taking. Congress conferred upon the agency a broad discretion. I would leave that discretion undisturbed.

WALLACE, Circuit Judge, dissenting:

I dissent from the majority opinion for reasons set forth in my dissent to *Villena v. INS*, 622 F.2d 1352 at 1362.