**Maria Socorro Guerrero DE REYNOSO and Jose Reynoso-Gonzales, Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 79–7226.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 2, 1980.

Decided Sept. 11, 1980.

Paul A. Schelly, Los Angeles, Cal., argued, for petitioners; Raymundo Q. Campos, Vivero & Campos, Los Angeles, Cal., on brief.

Eva S. Halbreich, Los Angeles, Cal., for respondent.

Before GOODWIN and PREGERSON, Circuit Judges, and SCHWARZER,* District Judge.

GOODWIN, Circuit Judge.

The only issue in this petition for review of an order denying suspension of deportation is whether the Board of Immigration Appeals abused its discretion under 8 U.S.C. § 1254 in denying relief. We have examined the case in the light of this court's recent en banc decisions in *Wang v. Immigration & Naturalization Service*, 622 F.2d 1341 (9th Cir. 1980); and *Villena v. Immigration & Naturalization Service*, 622 F.2d 1352 (9th Cir. 1980). We are unable to find an abuse of discretion.

Like the petitioners in *Wang*, the petitioners here have lived illegally for several years in the United States without generating any other reason to believe that they are not of good moral character. They have accumulated a modest collection of personal property, and by thrift and industry have improved their standard of living over that which they probably would have enjoyed in their native Mexico.

Unlike the Wangs, these petitioners have no United States citizen children or other citizen dependents. They do have some relatives who reside in the United States including Jose's parents whom they help with their support. The only real hardship caused by repatriation in this case, however, would be the change in the personal standard of living that occurs any time a person without substantial wealth or property is forced to move from the United States to Mexico.

In this case, there is nothing to distinguish the hardship of these petitioners from that of any of the thousands of other Mexican nationals who annually enter the United States illegally and who then accumulate seven years of good time in this country. The resulting changes in their standard of living and the resulting widening disparity between their standard of living here and that which remains the lot of their fellow countrymen who continue the struggle for existence in Mexico do not, per se, create extreme hardships. It is the disparity between the standards of living in the two adjoining countries which provides the magnet for the illegal immigration which flows steadily northward. If this court were to grant relief in this case we would be holding that the hardship involved in returning to a former, lower material standard of living automatically requires a remand in every deportation case that fits the residential and character requirements of § 1254.

---

* The Honorable William W. Schwarzer, United States District Judge for the Northern District of California, sitting by designation.

We are satisfied that Congress did not intend, in granting discretion to the Attorney General, to burden that officer with the numbers of hearings that would be required if the discretion conferred by the statute were to be as limited as the petitioners' contentions would limit it.

Congress could, if it saw fit, amend 8 U.S.C. § 1254 to make seven years of residence and good conduct a statutory bar to deportation. Congress has not done so.

After affirming the order denying suspension of deportation, the Board of Immigration Appeals granted both petitioners 30 days within which to depart voluntarily. We renew that grant. *See Khalil v. District Director of U. S. Imm. & Nat. Serv.,* 457 F.2d 1276, 1278 (9th Cir. 1972). Therefore, the 30-day voluntary departure period shall begin to run on the date this opinion is filed.

Affirmed.

PREGERSON, Circuit Judge (dissenting):

I dissent.

Mr. and Mrs. Reynoso-Gonzalez (Reynoso) petition for review of an order of the Board of Immigration Appeals affirming the immigration judge's order of deportation. Petitioners contest the immigration judge's conclusion, adopted by a divided Board, that the Reynosos failed to show eligibility for suspension of deportation under § 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254.

To be eligible for suspension of deportation under 8 U.S.C. § 1254(a)(1), a deportable alien must show: (1) at least seven years continuous physical presence in the United States immediately before the filing of the application for suspension of deportation; (2) good moral character during that period; and (3) extreme hardship, resulting from deportation, to the alien, or to his spouse, parent, or child who is a citizen of the United States, or an alien lawfully admitted for permanent residence.[1]

In suspension of deportation proceedings, the alien has the burden of presenting evidence that establishes his or her eligibility for the discretionary relief provided by § 1254(a). Here the Reynosos satisfied the requirements of seven years continuous presence and good moral character. Evidence presented by them failed, however, to convince the immigration judge that they satisfied the third requirement of § 1254(a)(1), extreme hardship.

Recently our court, sitting en banc, decided *Wang v. INS,* 622 F.2d 1341 (9th Cir. 1980), and *Villena v. INS,* 622 F.2d 1352 (9th Cir. 1980). Both cases involved the extreme hardship requirement of § 1254(a)(1). *Wang* was taken en banc to clear up the "confusion as to what an alien is required to show and what [evidence] the Board . . . is required to consider in cases where the questions are whether the alien is (1) eligible for and (2) merits suspension of deportation [under § 1254]." *Wang v. INS,* at 1344. In *Wang* the Board denied the aliens a hearing on suspension of deportation because they had not made the required prima facie showing of extreme hardship. This court reversed the Board's order and remanded for a hearing on the petitioners' eligibility for suspension of deportation.

The issue raised in *Villena* was "whether the Board abused its discretion by concluding that neither (1) the facts alleged in the application [for suspension of deportation] nor (2) those alleged in the motion [to reopen the deportation proceedings] estab-

---

1. 8 U.S.C. § 1254(a)(1) reads in part:

[T]he Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable . . .; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child who is a citizen of the United States or an alien lawfully admitted for permanent residence.

lished the extreme hardship required by . . . § 1254." *Villena v. INS*, at 1358 (footnote omitted). In *Villena* we held that although the Board did not abuse its discretion by denying the original application for suspension of deportation, it did abuse its discretion by denying Villena's motion to reopen deportation proceedings because the additional facts alleged in the motion, when considered with the facts alleged in the original application, established a prima facie showing of extreme hardship. We reversed and remanded *Villena* for further proceedings.

In light of this court's teachings in *Wang* and *Villena*, I cannot agree with the majority that the Board did not abuse its discretion in denying Mr. and Mrs. Reynoso's application for suspension of deportation. Of course, the Board did not have the benefit of *Wang* and *Villena* when it rendered its decision last year. For this reason—and because *Wang* and *Villena* directly bear on the extreme hardship issue raised in the Reynosos' application—the matter should be remanded to the Board for reconsideration in light of those decisions.

*Wang* reminds us that § 1254 should be construed liberally to effectuate § 1254's ameliorative purpose. *Wang v. INS*, at 1345. *Villena*, on the other hand, cautions that " '[e]xtreme hardship' is not a fixed and inflexible term; a discretionary determination of extreme hardship must be based on the particular facts of each case." *Villena v. INS*, at 1357. *Wang* and *Villena*, read together, indicate that the barrier an alien must overcome to satisfy, prima facie, § 1254(a)(1)'s hardship requirement should not be set too high.

In *Wang*, petitioners contended that their deportation would result in extreme hardship to themselves and to their minor citizen children. In papers filed before the Board, the Wangs said that their children would suffer serious economic, educational, and cultural difficulties if forced to leave this country with their parents. The Board, however, took the position, formulated without the benefit of a hearing, that possible inconvenience to the children did not

rise to the degree of hardship contemplated by § 1254. That position was found to be erroneous. *Wang v. INS*, at 1347–1348.

The Wangs also stated that deportation would cause both them and their children severe economic hardship. The Board's response was: "It is well settled that a mere showing of economic detriment is not sufficient to establish extreme hardship within the meaning of [§ 1254(a)(1)]." *Id.* at 1348. This court cautioned that: "[I]t is necessary for the Board to consider the total potential effect of deportation on the alien and his family and that where a showing of economic hardship is combined with some other substantial hardship the Board should afford the alien a hearing on the issue of extreme hardship." *Id.* at 1349. We ended our discussion of extreme hardship on this note: "We do not preclude the possibility that upon further examination the Board, in the sound exercise of its discretion, may find that either hardship alone is extreme and warrants relief or that both combined are hardships sufficient to warrant relief." *Id.* (footnote omitted).

In *Villena*, petitioner, in his original application for suspension of deportation, asserted extreme hardship to himself and to his son, a citizen of the United States. Villena, a chemist with a masters of science degree from the University of Oklahoma, contended that he would be denied comparable employment in his native land, the Philippines, because industry there had not reached sophisticated levels of research. The record, containing facts as to Mr. Villena's contributions to community service projects, also demonstrated his integration into American culture. Villena urged that separation from his family would cause him extreme hardship, although only one brother lived in this country at the time of his application and most of his family lived in the Philippines. He also claimed that deportation would have a traumatic effect on his two-year-old son, and he submitted a letter to that effect from a clinical psychologist.

In examining these various items of claimed hardship, we pointed out that even

though each item alone would not establish Villena's claim, each should nevertheless be weighed along with other facts in determining extreme hardship under § 1254(a)(1). Although we might not have reached the same conclusion as the Board, we could not say that the Board abused its discretion by denying suspension of deportation. *Villena v. INS*, at 1357–58. But we reached a different conclusion regarding the Board's denial of Villena's motion to reopen. We held that Villena alleged new facts which, if proved, would establish eligibility for relief and would affect the results of the proceedings. Accordingly, we concluded that the Board abused its discretion in denying the motion to reopen because Villena had set forth a prima facie case of eligibility. *Id.* at 1358.

The motion to reopen stated a number of new facts, which we found to be significant, in support of Villena's claim of extreme hardship. Those additional facts were: (1) that a second citizen child had been born to the Villena family and deportation would separate Mr. and Mrs. Villena's two citizen children from their grandparents, who were now in the United States as permanent residents; (2) that Villena and his wife had purchased a new home here; (3) that Villena's parents had become legal residents of the United States and were residing with Villena and his family; and (4) that Villena's brother had become a United States citizen. We thought the fact that Villena's parents were living with him also suggested that his parents might be partially dependent upon him for support and that Villena's deportation would cause his parents hardship. *Id.* at 1359. We concluded that the aggregate effect of the allegations of hardship in the original application and in the motion to reopen, when considered with the prejudice caused to Villena by the INS's four year delay in processing his earlier petition for preference classification, warranted his entitlement to a hearing on his motion to reopen. *Id.* at 1361.

This court's rejection, in *Wang* and *Villena,* of the Board's narrow reading of the extreme hardship requirement demonstrates our view that § 1254 does not require an alien to traverse a rigorous obstacle course before being entitled to ask the Attorney General for the discretionary relief of suspension of deportation accorded by § 1254.

Since the Board was without the benefit of *Wang* and *Villena* when it rendered its decision, I would ask the Board to examine the Reynosos' petitions anew in light of the message in those opinions that § 1254 should be construed liberally and compassionately.

At the time of the deportation hearings in 1978, Mr. Reynoso had lived in the United States since 1967 and Mrs. Reynoso since 1968—well over the seven year minimum. Each was 46 years of age. Although they had no children of their own, Mr. Reynoso had three grown children from a previous marriage living in Mexico. Mrs. Reynoso, on the other hand, had four sisters living as permanent residents in the United States.[2] In addition, Mr. Reynoso's mother, father, and younger brother were permanent residents here. Deporting the Reynosos would deprive them and their families here of each other's society, support, and comfort. It appears that the Reynosos, if deported, would also suffer serious economic hardship. Mr. Reynoso is a carpenter earning, at the time of the deportation hearings in 1978, about $250 per week. In Mexico, because of depressed economic conditions, he would be forced to give up his present standard of living and suffer serious hardship by again having to toil in the fields as a stoop laborer. Mrs. Reynoso is a sewing machine operator earning, at the time of the deportation hearings, about $116 per week. In Mexico she claims she would be without gainful employment and would therefore suffer serious economic hardship. Moreover, the Reynosos contribute about $100 per month to the support of Mr. Rey-

---

**2.** The allegation that Mrs. Reynoso's four sisters and Mr. Reynoso's brother are permanent residents increases the weight to be accorded the separation factor, even though siblings are not specifically mentioned in § 1254. *Villena v. INS,* at 1359.

nosos permanent resident elderly parents who, although they receive Social Security payments and help from their younger son, would nonetheless suffer economic hardship if the petitioner and his wife were deported to Mexico.[3] In addition, Mrs. Reynoso's health has been poor since an automobile accident, and medical care is more readily available to her here than in Mexico.

The majority ignores the totality of facts that relate to the Reynosos and, instead, invokes a floodgates argument in characterizing their situation as similar to that of "any of the thousands of other Mexican nationals who annually enter the United States illegally and who then accumulate seven years of good time in this country." At 959. The evil in this approach is its stereotypical treatment of all Mexican aliens who seek to remain in this country. Moreover, this approach flouts the long established rule that each hardship case must be decided on its own facts. *See Wang v. INS*, at 1347. In reviewing the Board's decision denying an application for suspension of deportation, our role is to examine each case on its own merits, rather than to speculate about "thousands" of other matters not before us.

The majority's characterization of this case as typical is factually incorrect as well. Not every alien who seeks to remain in this country has elderly permanent resident parents who are at least partially dependent upon their petitioner children for support. Nor does every alien suffer, as will the Reynosos if deported, the pain of separation from a large extended family of permanent resident parents, siblings, nieces, and nephews. Nor does every alien risk the prospect, as does Mrs. Reynoso if deported to Mexico, of exacerbated health problems and a total lack of employment opportunities, not to mention Mr. Reynoso's loss of gainful employment as a carpenter. All of these factors—loss of gainful employment, separation from family, economic hardship to permanent resident parents, interruption of medical treatment, separation from American culture—should be considered in determining whether to grant suspension of deportation. Yet the majority closes its eyes to the realities of the Reynosos' lives and overlooks all aspects of their case except for economic hardship. The hardship in this case extends beyond the specter of a lower standard of living in Mexico. The Reynosos are working people whose security in life is based on jobs and family. One would think that wrenching them from the land in which they have worked and lived and planted their roots for well over a dozen years would have a severe effect on their lives. This is why I would ask the Board to reexamine the Reynosos' applications in light of our recent decisions in *Wang* and *Villena* which, I believe, teach us that § 1254 should be construed liberally and compassionately.

---

3. The fact that Mr. Reynoso's parents are partially dependent upon Mr. Reynoso for support is similar to the situation of the petitioners' parents in both *Wang v. INS, supra,* and *Chan v. INS,* 610 F.2d 651, 655 (9th Cir. 1979). *Chan* was decided after the Board's decision in *Reynoso*—another reason why this case should be remanded to the Board for reconsideration.