## MATTER OF SIPUS

### In Deportation Proceedings

### A-14293683

*Decided by Board November 10, 1972*

(1) A mere showing that an alien has achieved the minimum statutory period of continuous physical presence for suspension of deportation does not, without more, justify granting a motion to reopen the deportation proceedings to permit an application for suspension.

(2) A motion to reopen the proceedings should disclose all prior and pending judicial litigation in the case.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant visitor—remained longer than permitted.

ON BEHALF OF RESPONDENT:        ON BEHALF OF SERVICE:
Hiram W. Kwan, Esquire          William S. Howell
840 North Broadway              Trial Attorney
Los Angeles, California 90012
(Brief filed)

This is an appeal from an order of a special inquiry officer denying the respondent's motion to reopen the deportation proceedings to allow her to file an application for suspension of deportation under section 244(a)(1) of the Immigration and Nationality Act. Oral argument, which is requested, is no longer available as a matter of right on such an appeal, 8 CFR 3.1(e). Oral argument will be denied and the appeal will be dismissed.

Respondent is a 51-year-old married female alien, a native and citizen of the Philippines, who was admitted to the United States on July 26, 1965 as a nonimmigrant visitor and remained longer than permitted. At a hearing before a special inquiry officer on January 28, 1969, she admitted the factual allegations of the order to show cause, conceded deportability and applied for voluntary departure. The special inquiry officer found her deportable and granted voluntary departure to March 1, 1969. She failed to depart.

On April 29, 1972, counsel filed a motion to reopen the proceed-

ings so that respondent might file an application for suspension of deportation. Attached to the motion was a filled-out suspension application. The motion to reopen, which is unsupported by any affidavit or other evidence, is extremely brief. Its essence is contained in two short paragraphs:

[III] Respondent is statutorily eligible for suspension of deportation having first entered the United States in March 1962. It is believed her case falls squarely within 12 I. & N. Dec. 271.

[IV] Counsel is prepared to present the necessary evidence at the time of hearing.

The suspension application recites that respondent first entered the United States as a visitor on March 27, 1962 and was absent thereafter but once, from December 1964 to the date of her last entry on July 26, 1965. The Service's trial attorney opposed the motion on the ground that this absence of almost eight months broke the continuity of the seven years' physical presence required by section 244(a)(1) of the Act. The special inquiry officer agreed and denied the motion in his order dated May 23, 1972, now before us on appeal.

The issue raised on appeal is now moot. More than seven years have now elapsed since respondent's last entry on July 26, 1965. We therefore need not consider whether her preceding absence broke the continuity of her physical presence following the 1962 entry. Since she can now establish the minimum required period of physical presence, we would ordinarily reopen and remand if her motion papers made out a prima facie case for reopening in other regards. In our view, they do not.

The motion to reopen, as we have noted, is singularly lacking in factual detail. The suspension application reflects that respondent's husband, whom she married on December 24, 1942, is a self-employed farmer in the Philippines. Respondent's five children, ranging in age from 9 to 27, are natives and citizens of the Philippines and presumably now reside there since their present residence is not indicated. Neither the husband nor any of the children is listed as a permanent resident alien. Respondent also lists six brothers and sisters, all natives and citizens of the Philippines, now also presumably residing there. Since December 1966 respondent has been employed as a domestic and now earns $125 a week. She states she cannot return to her native land because of "financial hardship."

As we pointed out in *Matter of Lam*, Interim Decision No. 2136 (BIA, 1972), continuous physical presence for the minimum statutory period is only one of the eligibility requirements for suspension of deportation. There are others, including a showing that the alien's deportation would result in extreme hardship to the alien

or other specified family members who are citizens or legally resident aliens. The pertinent regulations[1] require that a motion to reopen shall state the new facts to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material.

No hard and fast rule can be laid down as to what constitutes a sufficient showing of a prima facie case for reopening. Much depends on the nature of the case and the force of the evidence already appearing in the record sought to be reopened. Where that record is negative or contains adverse factors, a mere statement of conclusory allegations with respect to the statutory prerequisites is seldom enough. Where reopening for suspension purposes is sought, a mere showing that the alien has at last achieved the minimum statutory period of continuous physical presence does not ordinarily, without more, establish the other statutory prerequisites sufficiently to warrant reopening for a plenary hearing. On the other hand, we have on occasion overlooked the technical inadequacy of a motion to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.

On the record now before us, we cannot infer from the mere fact that respondent can now establish seven years' continuous physical presence that she may also be able to prove the prerequisite extreme hardship if given a chance at a reopened hearing. From what already appears, it is clear that all her close relatives are in the Philippines. Respondent's deportation there, far from causing extreme hardship by separating her from her family, would serve to reunite her with them. Insofar as concerns the "financial hardship" which she asserts in her application, it has been consistently held that mere economic detriment, without more, is not enough to make out the extreme hardship required by the statute, *Kasravi v. INS*, 400 F.2d 675 (C.A. 9, 1968); *Kwan Shick Myung v. INS*, 368 F.2d 330 (C.A. 7, 1966).

If there are other facts in counsel's possession which would tend to make out a case of extreme hardship, he has not made them known. The special inquiry officer cannot be expected to act on conjecture. Counsel's unsupported and conclusory assertion in the motion that he "is prepared to present the necessary evidence at the time of hearing" does not tell us or the special inquiry officer what evidence he is prepared to present and does not satisfy us that the additional delay entailed in a reopening would likely be

---

[1] Reopening before the Service is governed by 8 CFR 242.22 and 103.5. Reopening before the Board is governed by 8 CFR 3.2 and 3.8.

worthwhile. We conclude that the special inquiry officer properly denied the motion to reopen.

One further aspect of this case should be mentioned. From the record now before us, it appears that on May 11, 1972, after he had filed the motion to reopen but before the special inquiry officer had ruled on it, counsel for respondent filed a petition under section 106(a) of the Immigration and Nationality Act to review the original deportation order, *Sipus* v. *INS*, 9 Cir., No. 72–1838. On June 16, 1972, the court entered an order dismissing the petition for review and dissolving the statutory stay of deportation automatically available under section 106(a)(3) of the Act. On June 21, 1972, counsel petitioned the court for rehearing. In his supporting memorandum, counsel challenged the special inquiry officer's order now before us on appeal and argued, on the "extreme hardship" issue, that "[Respondent], at the age of 51 and with no recent employment history in her native country, would experience extreme difficulty in finding work of any kind if she were deported to the Philippines." On June 28, 1972 the court denied the petition for rehearing.

We mention the court proceedings for two reasons: First, in court, counsel went into considerably more detail in defining the extreme hardship claim than he did either before the special inquiry officer or before this Board on appeal. Even with these additional details, we are satisfied that a prima facie case for reopening is not made out.

Second, we note that neither in his notice of appeal dated June 3, 1972, nor in his brief on appeal to this Board bearing the same date, did counsel mention the proceedings for judicial review then pending. We have previously pointed out how important it is that we be informed of court litigation brought by a party to a proceeding before us which might affect our decision in that proceeding. See *Matter of Wong*, 13 I. & N. Dec. 258; 8 CFR 3.8(a). Prior litigation is important because, among other things, the judgment entered therein may have *res judicata* effect. It is equally necessary that we be informed of pending litigation, so that we may either withhold or shape our decision in such a way as not to impinge upon the jurisdiction of the court. If counsel deliberately withheld this information from us, we could only regard it as a lack of the good faith which we are entitled to expect from attorneys who appear before us.

We have no reason to believe that either of the Ninth Circuit's judgments has conclusive effect on the issue now before us. The petition for review dismissed by the court's order of June 16, 1972 dealt with the original deportation order and not the special inquiry officer's order now before us. While counsel sought to draw

the latter order into the court proceedings in his petition for rehearing, it is clear that he did not succeed. In denying the petition for rehearing, the court wrote no opinion. It is fairly inferable, however, that the court's refusal to entertain respondent's challenge to the special inquiry officer's order was due to respondent's failure to exhaust her administrative remedy of appeal to this Board, as required by section 106(c) of the Act. We see no reason to regard the court's order of June 28, 1972 as an adjudication on the merits of the issue now before us. Accordingly, we shall enter an order disposing of the appeal before us on its merits.

**ORDER:** The appeal is dismissed.

**Warren R. Torrington, Member, Concurring:**

I concur in the result, but not in the unnecessary, inaccurate, and misleading statements which appear in the following paragraph quoted from the Board opinion.

No hard and fast rule can be laid down as to what constitutes a sufficient showing of a prima facie case for reopening. Much depends on the nature of the case and the force of the evidence already appearing in the record sought to be reopened. Where that record is negative or contains adverse factors, a mere statement of conclusory allegations with respect to the statutory prerequisites is seldom enough. Where reopening for suspension purposes is sought, a mere showing that the alien has at last achieved the minimum statutory period of continuous physical presence does not ordinarily, without more, establish the other statutory prerequisites sufficiently to warrant reopening for a plenary hearing. On the other hand, we have on occasion overlooked the technical inadequacy of a motion to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.

They might create the—wrong—impression that we have the right to ignore the regulations which govern motions to reopen, and which are cited in footnote 1 of the Board opinion. We have no such right. The regulations have the force of law; and it is our duty to enforce them. Thus, "a mere statement of conclusory allegations with respect to the statutory prerequisites" for the relief sought is not "seldom enough;" it is *never* enough. The quoted dictum is in sharp conflict with the letter and spirit of the clear provisions of the pertinent regulations. Section 3.8 of Title 8 of the Code of Federal Regulations expressly provides in subsection (a) as follows: ".... Motions to reopen shall state the new *facts* to be proved at the reopened hearing and shall be supported by affidavits or other evidentiary material...." [Emphasis supplied.] Almost identical provisions govern motions to reopen directed to an officer of the Service and, in particular, in deportation proceedings to a special inquiry officer. 8 CFR 103.5 and 8 CFR 242.22.

Similarly, where "reopening for suspension purposes is sought, a mere showing that the alien has at last achieved the minimum statutory period of continuous physical presence does not" *ever*, "without more, establish the other statutory prerequisites sufficiently to warrant reopening for a plenary hearing." The use of the word "ordinarily" in the Board opinion appears to me to be quite misleading.

Finally, the following statement quoted from the Board opinion is far too broad and general, and is therefore not a correct exposition of what we can lawfully do: "On the other hand, we have on occasion overlooked the technical inadequacy of a motion to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening."

Obviously, a motion to reopen will always be granted where a failure to reopen the proceedings might result in a gross miscarriage of justice. For example, in a matter involving an alien's application for withholding of deportation to a country in which he allegedly would be subject to persecution on account of race, religion, or political opinion, neither a special inquiry officer nor this Board would dream of denying a motion to reopen because of some "technical inadequacy" (as the Board opinion puts it). That, however, does not mean that we have the general authority to "overlook" clear violations of, or non-compliance with, the applicable laws and regulations of the United States.