# United States Court of Appeals

## For the First Circuit

No. 08-2571

JOHN SMITH,[*]

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Lipez, and Howard,
<u>Circuit Judges</u>.

<u>Kerry E. Doyle</u>, with whom <u>Graves & Doyle</u> was on brief, for petitioner.
<u>Hillel R. Smith</u>, Attorney, Office of Immigration Litigation, Civil Division, with whom <u>Tony West</u>, Assistant Attorney General, and <u>Greg D. Mack</u>, Senior Litigation Counsel, were on brief, for respondent.

September 9, 2010

---

[*] A pseudonym.  This published opinion has been redacted to remove any identifying information.  The original opinion remains under seal.

**LIPEZ**, <u>Circuit Judge</u>.  Petitioner John Smith seeks review of a decision of the Board of Immigration Appeals (BIA) denying his motion to reopen his removal proceedings so that he could apply for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).  In his motion, Smith cited changed country conditions and new evidence that was unavailable to him during the proceedings on his initial application for adjustment of status.  Because we conclude that the BIA committed errors of law in deciding that Smith had not shown changed country conditions or made a prima facie case for relief, thereby abusing its discretion, we grant the petition for review and remand for further proceedings consistent with this opinion.

**I.**

The evidence presented by Smith is fairly summarized as follows.  Smith was born in Zimbabwe.  He is from a large family and his parents worked.  He became an active member of the Zimbabwe National Students Union (ZINAZU), an organization that was opposed to the Zimbabwe African National Union (ZANU-PF) government then in power in Zimbabwe.  Smith held a position in ZINAZU and also joined the Zimbabwe Unity Movement, a political movement seeking to unseat ZANU-PF in the 1990 general election.  He had a leadership role in that organization.  As a result of his political activities, Smith was arrested and detained multiple times, first in the early 1990s, again a few years later, and finally a few years after that.  On

all three occasions, he was beaten severely and threatened with further harm to himself and his family.

After his last, most severe detention and beating, Smith decided to leave Zimbabwe in an act of self-preservation. He entered the United States in the mid-1990s on a visa. He attended a college and then a university and earned a degree. Smith worked for two years as an environmental design engineer before becoming a civil engineer with a firm in the United States, where he worked until several years ago. During those years, he continued to pursue his education. In 2003, he earned a graduate degree from a university. From 2004 to 2007, he again attended a university he had previously attended while he worked towards a second graduate degree.

## A. Adjustment of Status

In the late 1990s, Smith married Sarah Jones, an American citizen, with whom he later had a son, also named John.[1] Smith and Jones sought to adjust his immigration status based on their marriage by filing an I-130 visa petition and applying for adjustment of Smith's immigration status. Smith's application for adjustment of status was initially denied when Jones withdrew her support, but was reopened sometime in the early 2000s after Jones filed another I-130 visa petition on Smith's behalf. Smith's

---

[1] The marriage ended after seven years, in 2006, the same year John was born.

second application was also denied in the mid-2000s, after a hearing before an immigration judge. Although the immigration judge found Smith to be credible and that his marriage was bona fide, she cited Jones's failure to appear in support of Smith in refusing to adjust his status. The immigration judge granted Smith voluntary departure with an alternate order of removal to Zimbabwe. Smith's appeal of that decision was dismissed by the BIA. In a brief opinion, the BIA stated that the outcome was "an understandable and appropriate exercise of the Immigration Judge's discretion to deny adjustment of status."

**B. Motion to Reopen**

In the late 2000s, more than a year after his appeal was dismissed, Smith filed a pro se motion to reopen his removal proceedings with the BIA so that he could apply for asylum, withholding of removal, and CAT protection. In the motion, Smith stated that he feared being persecuted and tortured if returned to Zimbabwe. That argument was based, in part, on his past persecution by the reigning ZANU-PF regime. As required to excuse his failure to file a motion to reopen within the ninety-day statutory window, see 8 C.F.R. § 1003.2(c)(3)(ii), Smith argued that in the time since the BIA dismissed his appeal in the mid-2000s, conditions in Zimbabwe had changed dramatically for the worse for those who, like him, had been active opponents of the ZANU-PF or whose families had been labeled as opposition.

In support of his motion to reopen, Smith submitted an affidavit describing his earlier persecution for his earlier activism against the ZANU-PF. He also detailed more recent violence against his family in Zimbabwe.[2] According to Smith, his family has been harassed, intimidated, and physically attacked for allegedly sympathizing with neighboring white farmers. He described two violent attacks in the mid-2000s, one in which his father was attacked violently, and another in which a cousin who lived with close family was killed by the ZANU-PF youth militia. In the late 2000s, the family was targeted once again for its political sympathies. The April 2008 elections in Zimbabwe resulted in the withdrawal of the candidate of the opposition, Movement for Democratic Change (MDC), due to ZANU-PF-directed violence that made it impossible to conduct a free and fair election. According to Smith, his family did not vote in the elections. Nevertheless, shortly after the election, ZANU-PF youth militia invaded Smith's parents' home in retaliation for the heavy support the MDC received in the elections in the area where they lived. The family's home was destroyed and his family members

_____

[2] By way of background, Smith made a public statement regarding his political views of the Zimbabwe regime while in the United States. The public statement was seen in Zimbabwe and his close family then contacted him to let him know that his actions were extremely dangerous for family still in Zimbabwe.

were attacked.  Another individual was killed.  Smith's family members escaped to another country.[3]

Smith also submitted evidence that failed asylum seekers who were returned to Zimbabwe were being subjected to harsh interrogation by the government's Central Intelligence Organization (CIO).  He included a judicial opinion from the United Kingdom in which the court concluded, based on extensive testimony, that because failed asylum applicants are not channeled to the immigration authorities, but are instead immediately screened and interrogated by the central intelligence arm, they face a heightened risk of physical violence.  The court made this finding after hearing credible testimony that beatings are "a systemic feature of a CIO investigation," particularly for opponents of the ZANU-PF.

Finally, Smith's motion to reopen included country reports and other documents showing that both government and non-governmental organization observers agreed that human rights abuses by the ZANU-PF were worsening in Zimbabwe.  For example, a U.S. State Department Country Report on Human Rights Practices in Zimbabwe shows, among other things, that ZANU-PF-sponsored torture in Zimbabwe increased almost threefold between 2006 and 2007 (from 1,185 incidents to 3,463 incidents).  The State Department reports

---

[3] Several days before the BIA ruled on his motion to reopen, a close family member of Smith's was killed after returning to Zimbabwe.

also describe a "systematic government-sponsored campaign to dismantle the opposition party's structures" prior to the 2008 elections through violence directed at supporters, expulsion of villagers who supported the MDC, and withholding of government-supplied food aid from MDC supporters. A 2006 report from Human Rights Watch concluded, similarly, that "[v]iolent repression of civil society activists by state authorities in Zimbabwe continues to escalate."

## C. The BIA's Order

The BIA denied Smith's motion to reopen, concluding that it was not timely because it had not been filed within ninety days of the final decision on his application for adjustment of status, as required by 8 C.F.R. § 1003.2(c)(2). Although recognizing that there is an exception to the ninety-day time limit for motions to reopen where an alien is seeking asylum and withholding of removal based on changed circumstances in the country of nationality or the country to which removal has been ordered, see 8 C.F.R. § 1003.2(c)(3)(ii), the BIA found that Smith had not demonstrated "that conditions have materially changed for him in Zimbabwe."

The BIA rejected Smith's claim that conditions in Zimbabwe worsened for opposition supporters before and after the 2008 elections. The Board found that "[e]vidence that the ZANU-PF has been abusing individuals who voted for the MDC in the April 2008 elections is immaterial to [Smith]" because "he was not even

-7-

present in Zimbabwe" during the elections and does not claim to have voted in them.  The BIA dismissed Smith's evidence of violence against his family, noting "the mere fact that [Smith's] family was targeted . . . standing alone, does not make a prima facie showing that the respondent himself may face persecution on account of a protected ground under the Act or torture upon his repatriation."

Similarly, the BIA reasoned that evidence that "state-sponsored abuse of opposition activists in Zimbabwe has increased in the last few years, standing alone, does not reflect material [sic] changed country conditions for the respondent."  The BIA found that Smith had not identified "evidence that would indicate that conditions have deteriorated or otherwise changed for individuals like himself who were politically active in Zimbabwe so long ago."

Finally, the Board rejected the evidence Smith introduced showing that Britain had granted asylum to a Zimbabwean national because of the danger to rejected asylum seekers who are returned to Zimbabwe.  The BIA called that information "immaterial to the respondent" because he would not be removed "under that process."  The BIA asserted that Smith's claim was also "speculative" because "United States-based asylum proceedings are required by law . . . to remain confidential."  The BIA noted that the fact that the ZANU-PF government is suspicious of the United States "does not necessarily mean that [Smith] may face persecution and torture upon

his removal."  Again, the BIA found that "standing alone," Smith's evidence was "insufficient to make a prima facie showing" that he may be subject to persecution if returned to Zimbabwe.[4]

Smith filed this timely petition seeking review of the Board's denial of his motion to reopen.

**II.**

The BIA has jurisdiction over motions to reopen removal proceedings under 8 C.F.R. § 1003.2(a).  We, in turn, have jurisdiction over Smith's petition for review under 8 U.S.C. § 1252.  See Neves v. Holder, 613 F.3d 30, 35 (1st Cir. 2010) (finding that, under the Supreme Court's recent decision in Kucana v. Holder, 130 S. Ct. 827, 840 (2010), "courts generally have jurisdiction to review the BIA's decision to grant or deny [motions to reopen]").[5]

The scope of our review of the Board's order denying Smith's motion to reopen is limited.  See INS v. Doherty, 502 U.S. 314, 323 (1992).  The BIA has "broad discretion, conferred by the Attorney General, 'to grant or deny a motion to reopen.'"  Kucana,

---

[4] In response to Smith's motion for reconsideration of its order denying his motion to reopen, the BIA affirmed its previous ruling.  Smith appeals only the BIA's initial denial of his motion to reopen.

[5] We note that here, as in Neves, Smith does not seek "review of any of the kinds of decisions on admissibility by immigration officers insulated from review under 8 U.S.C. § 1252(a)(2)(A), and he is not removable as an aggravated felon, see id. § 1252(a)(2)(C)." 613 F.3d at 35 n.2.

130 S. Ct. at 838 (quoting 8 C.F.R. § 1003.2(a)). We therefore review for abuse of discretion the BIA's denial of Smith's motion. Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003). Under the abuse of discretion standard, we "uphold the agency's subsidiary findings of fact as long as they are supported by substantial evidence," we review "embedded legal conclusions de novo," and we "review judgment calls for abuse of discretion." Vaz Dos Reis v. Holder, 606 F.3d 1, 3 (1st Cir. 2010). A material error of law is an abuse of discretion. Id.

**III.**

This appeal turns on two related but distinct questions: first, whether Smith has presented sufficient evidence of changed country conditions to permit him to file a motion to reopen more than ninety days after the BIA rejected his claims; and second, whether the new evidence Smith has presented, together with the evidence already in the record, shows that he has a reasonable likelihood of prevailing on his asylum, withholding of removal, or CAT claims -- in other words, whether he has presented a prima facie case for any of those types of relief. While the first question goes to Smith's procedural right to bring his motion to reopen, the second goes to the merits of his claim. We conclude that the decision of the BIA, which answered both questions in the negative, was based on legal error; thus, the BIA abused its discretion.

There are both substantive and procedural bars to reopening removal proceedings. Substantively, federal regulations create two "threshold requirements for a motion to reopen: that it establish 'a prima facie case for the underlying substantive relief sought' and that it introduce 'previously unavailable, material evidence.'" Fesseha, 333 F.3d at 20 (quoting INS v. Abudu, 485 U.S. 92, 104 (1988)); see also 8 C.F.R. § 1003.2(c)(1). The BIA may deny a petition if it determines that the movant has failed to meet either of those requirements. In addition, the BIA may "leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." Abudu, 485 U.S. at 105.

Procedurally, a petitioner is limited to "a single motion to reopen a removal proceeding" which must be "submitted within ninety days of the rendition of the final administrative decision." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007) (citing 8 C.F.R. § 1003.2(c)(2)). These limitations are relaxed "only if a petitioner 'makes a convincing demonstration of changed conditions in his homeland.'" Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008) (quoting Raza, 484 F.3d at 127); see also 8 C.F.R. § 1003.2(c)(3)(ii). The change in conditions "must be material to the underlying substantive relief that the alien is seeking . . .

-11-

and the evidence tendered in support thereof must have been unavailable during the prior proceedings." Raza, 484 F.3d at 127.

## A. Changed Country Conditions

Smith brought his motion to reopen more than ninety days after the Board's final administrative decision. Because he missed the ninety-day procedural window for filing his motion, Smith must demonstrate changed conditions in his homeland that are material to his claim of eligibility for asylum, withholding of removal, and CAT protection. Tandayu, 521 F.3d at 100; Raza, 484 F.3d at 127. His evidence of changed country conditions also must have been "unavailable during the prior proceedings." Raza, 484 F.3d at 127.

As detailed above, to show changed country conditions, Smith presented evidence that in the time since his hearing before the immigration judge and the BIA's rejection of his appeal,[6] human

---

[6] The applicable provision, 8 C.F.R. § 1003.2(c)(3)(ii), states that the time and numerical limitations "shall not apply" to a motion to reopen proceedings "[t]o apply or reapply for asylum or withholding of deportation based on changed circumstances . . . if such evidence is material and was not available and could not have been discovered or presented at the previous hearing." The Third Circuit has held that the phrase, "discovered or presented at the previous hearing," refers to the hearing before the immigration judge, not a proceeding before the BIA at which no new evidentiary material could be presented. Filja v. Gonzalez, 447 F.3d 241, 254 (3d Cir. 2006); see also, Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir. 2002) (noting that "reopening decision[s] [are] made . . . without the benefit of an evidentiary hearing on the new issues raised"). That holding would place the relevant date for Smith's new evidence in the mid-2000s. We need not determine here which date applies, as the increase in violence against opposition supporters and the violence against Smith's family occurred after both dates.

rights abuses, particularly directed at supporters of the opposition to the ZANU-PF government, have, in Smith's words, gone from "general but not systematic" to "general, pervasive and systematic." Incidences of ZANU-PF-sponsored torture essentially tripled from 2006 to 2007. In particular, the ZANU-PF government targets those it suspects of supporting the opposition party. Violence of that nature struck Smith's family at that time, when his cousin was murdered and his father was attacked violently, and again a few years later, when the family members were driven from their property in a ward that had heavily supported the opposition in the 2008 elections.

In its opinion, the BIA did not dispute Smith's assessment of conditions in Zimbabwe, which he supported with his own affidavit and reports from human rights organizations, the United States government, and the press. Rather, the BIA's only explanation for its rejection of Smith's changed country conditions evidence was that neither the evidence of attacks against his family nor of increased violence against opposition activists "indicate[s] that conditions have deteriorated or otherwise changed for individuals like [Smith] who were politically active in Zimbabwe so long ago" or "who [were] not even present in Zimbabwe in April 2008" and did not vote in the elections that were held that year. In effect, the BIA seems to conclude that Smith had not made a showing of a material change in country conditions primarily

-13-

because he was not in Zimbabwe to experience the changed conditions that he describes.

This is an untenable construction of the changed country conditions requirement. By the BIA's logic, Smith would need to show that he himself had been present in Zimbabwe during the rise in persecution of opposition activists and the attacks against his family in order for those changes in country conditions to be considered material to him. In so holding, the BIA essentially would require a petitioner who, by definition,[7] has not resided in a country during the relevant change in conditions, to show that he was present in the country, engaged in political activity there during the period of change, and experienced personally the violence endured by his family. Such a rule of materiality is both logically unsound and incorrect as a matter of law, and we can find no support for such a rule in our case law.

To the contrary, numerous cases establish that a petitioner who had previously been politically active in his home country may successfully show that conditions have materially

---

[7] The exception to the ninety-day time limit for filing a motion to reopen applies if the basis of the motion is "to reopen deportation or removal proceedings . . . [and is] based on changed circumstances arising in the country of nationality." 8 C.F.R. § 1003.2(c)(2)&(c)(3)(ii). Both asylum and withholding of removal are relevant only to aliens who are already in the United States. See 8 U.S.C. § 1158(a)(1) ("Any alien who is physically present in the United States or who arrives in the United States . . . irrespective of such alien's status, may apply for asylum."); 8 U.S.C. § 1158(a)(2)(A).

changed when an opposition political party comes to power and begins persecuting supporters of the petitioner's party. See, e.g., Shardar v. Attorney General, 503 F.3d 308, 314-15 (3d Cir. 2007) (finding materially changed country conditions for former local leader of a political party when the opposition party regained power and began abusing those holding the petitioner's political opinions (citing In re Hossin, A70 907 367 (BIA Jan. 27, 2003) (unpublished))); Habchy v. Filip, 552 F.3d 911, 913-15 (8th Cir. 2009) (finding BIA erred in failing to consider materially changed country conditions for petitioner, a Lebanese man who had years earlier been accused by Hizballah of being an Israeli collaborator, who submitted reports showing upswing in violence against supporters of Israel by Hizballah in Lebanon); Kebe v. Gonzales, 473 F.3d 855, 858 (7th Cir. 2007) (holding that Ethiopian who had been imprisoned and beaten because of his opposition political party affiliation while living in Ethiopia had potentially demonstrated materially changed country conditions when he submitted human rights reports and news articles showing that violence against opposition groups had increased in Ethiopia surrounding elections in 2005); cf. Larngar v. Holder, 562 F.3d 71, 77 (1st Cir. 2009) (finding that the rise to power in Liberia of an enemy of the petitioner, a Liberian man who had resided in the United States for almost thirty years, was a material change in

-15-

country conditions).[8]

The case law also shows that recent violence against a petitioner's family members can constitute a material change in country conditions for a petitioner seeking to reopen his or her removal proceedings. For example, in Malty v. Ashcroft, 381 F.3d 942 (9th Cir. 2004), the Ninth Circuit found that a petitioner who "submitted a declaration detailing six separate incidents of persecution of his family members in Egypt -- all of which occurred subsequent to his asylum hearing" -- had successfully shown a material change in country conditions. Id. at 945-46. The court found not only that the beatings of his relatives constituted changed country conditions, but also that the petitioner had "demonstrated a pattern and practice of persecutions" by introducing evidence of "beatings, arrests, and threats[] against his similarly situated family members." Id. at 948; see also Ananeh-Firempong v. INS, 766 F.2d 621, 626 (1st Cir. 1985) (Breyer, J.) (finding that petitioner's evidence of "the house arrest of her parents, the beating of her nephew, the seizure of the family's bank account, [and] the persecution of petitioner's tribe, social class, and political persuasion" supported her asylum claim).

---

[8] Of course, in some cases it might be appropriate to focus on the length of time between a petitioner's experience in his home country and his reopening proceedings in determining whether claimed changes within the country are material to that person. That a petitioner was not in the country during claimed changes cannot, however, be a per se bar to the materiality of those changes to the petitioner.

Given the primary discernable basis for the BIA's rejection of Smith's changed country conditions claim -- the violence against his family and the rise in persecution of opposition activists did not relate to him because he was not in the country to experience them -- the BIA misapplied the standard of materiality in assessing Smith's evidence of a change in country conditions. 8 C.F.R. § 1003.2(c)(3)(ii); see also Fergiste v. INS, 138 F.3d 14, 19 (1st Cir. 1998) (finding error in the BIA's determination that general changes in conditions in a petitioner's home country rebutted his presumptive fear of future persecution because the BIA did not "discuss how or whether [petitioner's] particular situation may be affected by the changed country conditions that it recognized"). In finding that Smith's evidence was not material to his own fear of future persecution, the BIA abused its discretion.[9]

---

[9] We note that the government's argument that any escalation of violence in Zimbabwe is a mere continuation of existing patterns seems to have been rejected by the BIA. The BIA found that "evidence that state-sponsored abuse of opposition activists in Zimbabwe has increased in the last few years does not reflect materially changed country conditions for the respondent" because his activism took place many years earlier. In so finding, the BIA implicitly rejected the proposition that the increase in violence was nothing but a continuation of existing conditions, instead finding that a change had occurred, but that it was not material to Smith. The BIA was correct to reject the government's argument. The record shows, among other things, a tripling of the incidents of ZANU-PF-sponsored torture from 2006 to 2007 and the inception of violent campaigns by ZANU-PF militia associated with the unrest brought on by the 2008 elections. Such conditions certainly meet the standard we have enunciated -- namely, that evidence must "demonstrate the intensification or deterioration of country

## B. Prima Facie Showing

In order to establish eligibility for asylum, one of the forms of underlying relief sought by Smith, "an applicant must demonstrate a well-founded fear of persecution on account of one of five enumerated grounds, namely, 'race, religion, nationality, membership in a particular social group, or political opinion.'" Raza, 484 F.3d at 128-29 (quoting 8 C.F.R. § 208.13(b)(2)(i)(A)).[10] The applicant may meet this burden either by proving past persecution, which gives rise to a rebuttable presumption of future persecution, or by "showing that (a) the alien genuinely fears such persecution and (b) an objectively reasonable person in the alien's circumstances would fear such persecution." Mendez-Barrera v. Holder, 602 F.3d 21, 25 (1st Cir. 2010).

conditions, not their mere continuation." Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009).

[10] Because the analysis in this section centers on the analytical framework for evaluating whether a prima facie case has been made on a motion to reopen, rather than on the substance of the prima facie case, it applies with equal force to the three substantive grounds on which Smith seeks relief: asylum, withholding of removal, and CAT protection. See Abudu, 485 U.S. at 99 n.3 ("[T]he standard for granting reopening . . . is the same for both asylum and withholding of deportation requests."). To avoid redundancy, we conduct the analysis only once, with reference to Smith's asylum claim. See id. (noting that the analysis in that case was conducted for asylum claim only because it would apply to withholding claim as well and because "it is easier to prove well-founded fear of persecution than clear probability of persecution" as required for withholding of removal). On remand, the BIA will need to consider all three of Smith's substantive grounds for reopening.

To make a prima facie case for asylum in the context of a motion to reopen, "the applicant need only produce objective evidence showing a 'reasonable likelihood'" that he will face future persecution based on a statutory ground. Larngar, 562 F.3d at 78 (quoting Sevoian v. Ashcroft, 290 F.3d 166, 175 (3d Cir. 2002)). A "reasonable likelihood" means "showing a realistic chance that the petitioner can at a later time establish that asylum should be granted." Guo v. Ashcroft, 386 F.3d 556, 564 (3d Cir. 2004). To make a showing of either past persecution or a likelihood of future persecution, "an applicant's testimony, if credible, may be sufficient." Fesseha, 333 F.3d at 19 (citing 8 C.F.R. § 208.13(a)).

Smith asserts that he is eligible for asylum because he has a well-founded fear of persecution based on his political affiliation. He argues that his past persecution at the hands of the ZANU-PF contributes to his fear of future persecution. He also cites more recent events to support his claim that he will face persecution if returned. As described in detail earlier in this opinion, his prima facie case consists of evidence of his beatings by the ZANU-PF when he was a student in Zimbabwe, the recent escalation of violence against opposition activists, the recent violent persecution of Smith's family by the government, and the hostile treatment of failed asylum seekers when they are returned

-19-

to Zimbabwe, all of which combine to give him a well-founded fear of persecution if he is sent back to Zimbabwe.

The BIA gave two primary reasons for its determination that Smith had not made a prima facie case for asylum. First, it found that evidence of Smith's past mistreatment "does not warrant reopening because it could have been presented at the former hearing before the Immigration Judge." Turning to Smith's new evidence showing the targeting of his family, the increase in state-sponsored abuse of opposition activists, and the interrogation and mistreatment of deportees, the BIA found that each additional piece of evidence, "standing alone," did not "make a prima facie showing that the respondent himself may face persecution on account of a protected ground under the Act."[11]

---

[11] In its short order, the BIA used the "standing alone" phrase three times:

> (1) "The mere fact that the respondent's family was targeted for living in a [certain area] and attacked following the April 2008 elections, standing alone, does not make a prima facie showing that the respondent himself may face persecution . . . ."
> (2) "[E]vidence that state-sponsored abuse of opposition activists in Zimbabwe has increased in the last few years, standing alone, does not reflect material changed country conditions for the respondent . . . ."
> (3) "[T]he fact that the respondent may be interrogated and subject to background scrutiny by the CIO upon his repatriation because he is returning from the United States, standing alone, is insufficient to make a prima facie showing that the respondent may be subject to harm amounting to persecution . . . ."

-20-

There are two flaws in this reasoning. First, the BIA evaluated each piece of evidence in isolation to determine if it alone was enough to establish a prima facie case. That is clearly error. The BIA must consider the material evidence as a whole when assessing a petitioner's prima facie showing, rather than taking each individual piece and looking at it "standing alone."[12]

Second, the BIA erred in refusing to consider Smith's claim of past persecution as part of his prima facie showing. On a motion to reopen, an alien must both introduce material, previously unavailable evidence and make a prima facie showing of eligibility for the underlying relief sought. 8 C.F.R. §

---

(emphasis added).

[12] In order to provide guidance on remand, we note three additional errors in the BIA's treatment of Smith's claim involving his status as a failed asylum seeker that, in and of themselves, do not constitute grounds for a remand. First, the BIA relied on a regulation providing for confidentiality of asylum proceedings in concluding that Smith would not be identified as a failed asylum seeker by the CIO upon return to Zimbabwe. The regulation governing asylum proceedings, however, does not address Smith's contention that he would be escorted by the government to Zimbabwe and thus easily identified as a returnee from the United States. Although the government presumably would have access to information about the relevant deportation procedures, the record contains no evidence contradicting Smith's claim. The BIA's conclusion that the evidence from the United Kingdom was "immaterial" to Smith is thus unsupported by any evidence in the record. Second, as noted, the BIA insisted on reviewing in isolation Smith's contention that he would face interrogation on return to Zimbabwe. Finally, the BIA's conclusion that evidence that the Zimbabwean government views the United States' political stance with suspicion "does not necessarily mean" that Smith may face persecution is incompatible with the "reasonable likelihood" requirement that applies to a motion to reopen.

1003.2(c)(1). These requirements do not mean, however, that the BIA is limited to considering evidence that was unavailable at the prior hearing when it determines whether a petitioner has made a prima facie case for the relief sought. "'[P]rima facie' scrutiny of a motion to reopen means an evaluation of the evidence that accompanies the motion as well as relevant evidence that may exist in the record of the prior hearing, in light of the applicable statutory requirements for relief." Sevoian, 290 F.3d at 173; see also In re L-O-G-, 21 I. & N. Dec. 413, 419 (BIA June 14, 1996) (en banc) ("[W]e have been willing to reopen 'where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.'" (quoting In re Sipus, 14 I. & N. Dec. 229, 231 (BIA Nov. 10, 1972))). Because a petitioner filing a motion to reopen must produce new, material evidence, it follows that the prima facie showing will always include some new evidence. That showing does not, however, need to be made entirely through new evidence. Instead, it may be based on the new evidence coupled with "the facts already of record." In re L-O-G-, 21 I. & N. Dec. at 419. In other words, although previously available evidence of past persecution cannot be the sole basis for reopening, it may be relevant to the petitioner's prima facie case for asylum. Norani v. Gonzales, 451 F.3d 292, 295 n.6 (2d Cir. 2006).

The principle that previously available evidence may be considered part of the prima facie showing on a motion to reopen applies with equal force to a petitioner like Smith who seeks to reopen proceedings to make his first application for asylum.[13] Although the record contains no evidence previously submitted in support of his asylum claim, prima facie scrutiny of his motion to reopen must nonetheless include an evaluation of all of the currently available evidence. Norani, 451 F.3d at 295 n.6 ("[E]vents from [a petitioner's] past are relevant to [his] present asylum application even though [he] previously [did not] apply for asylum based solely on these events.").

In refusing to consider Smith's evidence of past persecution as part of his prima facie case, the BIA conflated Smith's burden to make a prima facie showing of eligibility for relief with the requirement that he produce previously unavailable evidence in order to justify reopening. That conflation was erroneous. See Abudu, 485 U.S. at 108-09 (holding that it would be error for an appellate court to "conflate[] the quite separate issues whether the alien has presented a prima facie case for

---

[13] The relevant regulation permits a motion to reopen in which a petitioner seeks asylum for the first time under either of two conditions: (1) if a petitioner's "right to apply for such relief" was not "fully explained to him" and an "opportunity to apply" was not "afforded at the former hearing," 8 C.F.R. § 1003.2(c)(1), or (2) if a petitioner applies "on the basis of circumstances that have arisen subsequent to the hearing." Id.

asylum with whether the alien has . . . offered previously unavailable, material evidence").

This circuit has not previously had occasion to enunciate this principle. We have indicated that the two burdens are separate. See, e.g., Fesseha, 333 F.3d at 20 (citing the two "threshold requirements for a motion to reopen: that it establish a prima facie case for the underlying substantive relief sought and that it introduce previously unavailable, material evidence." (internal quotation marks omitted)). But we have also, on occasion, seemed to sanction the conflation of the new evidence requirement with the prima facie case requirement. See, e.g., Chikkeur v. Mukasey, 514 F.3d 1381, 1383 (1st Cir. 2008) (stating, in dicta, that "[a] motion to reopen must be denied unless petitioners' new evidence establishes a prima facie case for the underlying substantive relief"); Tandayu, 521 F.3d at 100 (1st Cir. 2008). Abudu makes clear that the requirements are distinct. 485 U.S. at 108-09 & n. 13. Any suggestion to the contrary in our opinions was legally incorrect. Id.

**IV.**

The BIA made three primary legal errors in addressing Smith's motion to reopen. First, it applied an incorrect materiality requirement in assessing Smith's evidence of changed country conditions when it rejected his evidence of changed conditions because he was not in Zimbabwe to experience the changes

that he describes. Second, it evaluated Smith's evidence in support of his prima facie case piece by piece, rather than considering the material evidence as a whole. Finally, it conflated Smith's burden to make a prima facie showing of eligibility for relief with the requirement that he produce previously unavailable evidence in order to justify reopening, thereby failing to consider his evidence of past persecution in assessing his prima facie case. Because these errors prevented the BIA from applying the correct legal standards to the facts presented in Smith's motion to reopen, we remand this matter to the BIA so that it can consider, consistent with this opinion, whether Smith has established a change in country conditions that would excuse his late filing and, if so, whether he has made out a prima facie case of eligibility for asylum, withholding of removal, or protection under the CAT.[14] See, e.g., Larngar, 562 F.3d at 80 (remanding to the BIA to consider whether petitioner had established a change in country circumstances and, if so, made out a prima facie case of eligibility); Ananeh-Firempong, 766 F.2d at 629 (remanding to the BIA for further proceedings consistent with

---

[14] Given our disposition, we need not address Smith's additional contention that he was denied a fair opportunity to comply with the procedural requirements for the maintenance of an ineffective assistance of counsel claim, as set forth in Matter of Lozada, 19 I. & N. Dec. 637, 639 (BIA April 13, 1988).

the opinion after finding that the BIA abused its discretion in refusing to reopen petitioner's deportation proceeding).[15]

**So ordered.**

---

[15] Although the BIA's denial of Smith's motion for reconsideration was not before us (he did not appeal that denial), we note that the BIA's denial referenced the failure of Smith to submit certain affidavits and other documents.  On remand, the BIA has the authority to allow Smith to submit this additional information.  We also note that the BIA may consider, relevant to both the issue of changed conditions and Smith's prima facie case, that there is at least one later State Department report that incidents of ZANU-PF-sponsored torture rose more than five-fold from 2006 to 2008.