Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-1124

KUMUDINIE RENUKA PERERA,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Lipez, and Howard, Circuit Judges.

Visuvanathan Rudrakumaran on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Melissa Neiman-Kelting, Senior Litigation Counsel, Office of Immigration Litigation, and Jane T. Schaffner, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

March 27, 2012

**LIPEZ**, **Circuit Judge**.  Kumudinie Renuka Perera, a native and citizen of Sri Lanka, petitions for review of a Board of Immigration Appeals ("BIA") decision denying her untimely motion to reopen removal proceedings based on a claim of changed country conditions.  We deny the petition.

**I.**

Perera entered the United States on January 26, 2004, as a nonimmigrant visitor with authorization to remain in the country until July 25, 2004.  On January 20, 2005, she applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), claiming that she had been and would be persecuted or tortured in Sri Lanka based on an imputed political opinion, namely her alleged support for the Liberation Tigers of Tamil Eelam ("LTTE"), a terrorist group in Sri Lanka.  The Department of Homeland Security issued a Notice to Appear on March 24, 2005, charging Perera with being subject to removal for overstaying her visa.  See 8 U.S.C. § 1227(a)(1)(B).  Perera conceded that she was removable as charged, but also renewed her application for relief.

At a hearing before an immigration judge ("IJ") on October 26, 2006, Perera testified that her husband had been induced by his business partner to enter into a series of commercial construction contracts with a lumber merchant in northern Sri Lanka.  When the merchant was discovered by the police to be a member of the LTTE, Perera's husband went into hiding.  Two

-2-

days later, on February 15, 2003, Perera was questioned at her home by police officers searching for her husband. The officers returned to Perera's home on February 17, 2003, and threatened to arrest her if her husband did not emerge from hiding and surrender himself. Frightened, Perera went with her children to stay with her parents, while her husband fled Sri Lanka for Japan. After some time had passed, Perera began giving protection money to her husband's business partner, believing that he was paying off the police on her behalf, and returned to her home. On October 22, 2003, four officers wearing plain clothes blindfolded Perera and abducted her from her home at gunpoint, questioning her at an undisclosed location about her and her husband's involvement with the LTTE. The officers released Perera only after she promised to pay them the approximate equivalent of $2,700. She left for the United States shortly thereafter.

Perera's testimony was corroborated by an affidavit submitted to the IJ by her mother, who indicated that the police had continued to look for Perera after she departed for the United States. Perera's husband, who remained in Japan, submitted an affidavit to the same effect, based on secondhand information. The IJ was also given various background materials, including news articles and a copy of the United States Department of State's 2005 Country Report on Human Rights Practices in Sri Lanka, which

described the prevalence of police corruption in Sri Lanka and the mistreatment there of suspected LTTE collaborators.

In an oral decision delivered on April 17, 2007, the IJ denied Perera's application for relief. The IJ found that Perera's mistreatment in Sri Lanka had been part of an extortion scheme hatched by her husband's business partner in combination with the police, and had not been politically motivated. Accordingly, the IJ held that Perera had failed to establish that she had suffered past persecution or had a well-founded fear of future persecution on account of an imputed political opinion or any other protected ground, and thus was ineligible for asylum. See 8 U.S.C. § 1101(a)(42)(A); Seng v. Holder, 584 F.3d 13, 18 (1st Cir. 2009). The IJ also held that Perera, perforce, had not established her right to withholding of removal, since "claims for withholding of removal require a higher level of proof than claims for asylum," Villa-Londono v. Holder, 600 F.3d 21, 24 n.1 (1st Cir. 2010), and that Perera was not entitled to CAT protection because she had not shown that it was more likely than not that she would be tortured if returned to Sri Lanka, see 8 C.F.R. § 1208.16(c); Seng, 584 F.3d at 20.

Perera appealed the IJ's decision to the BIA, which dismissed her appeal on October 17, 2008, agreeing with the IJ that "[t]he mistreatment [Perera] suffered was financially, not politically, driven." Perera then filed a petition for review in

this court.  Because Perera had "failed to demonstrate that the BIA committed legal error or that the evidence compelled a finding that she demonstrated a nexus between the mistreatment she described and her imputed political opinion or that the claimed mistreatment amounted to persecution," we denied the petition.  Perera v. Holder, No. 08-2410 (1st Cir. Nov. 16, 2009) (Judgment).

On April 26, 2010, eighteen months after the BIA dismissed her appeal, Perera filed a motion asking the BIA to reopen her removal proceedings.  Although such motions usually must be filed within ninety days of the entry of the final administrative order of removal, see  8 U.S.C. § 1229a(c)(7)(C)(i), Perera invoked an exception for motions that seek to introduce previously unavailable, material evidence of changed country conditions, see 8 C.F.R. § 1003.2(c)(3)(ii).  In support of her motion, Perera submitted affidavits from herself and her mother. The affidavits stated that, since Perera filed her original application for relief, the police had not stopped searching for her, and her husband had been temporarily detained by immigration officers after appearing at a Sri Lankan airport with falsified travel documents.  Perera also submitted a transcript of remarks made by United States Secretary of State Hillary Clinton condemning the use of sexual violence in armed conflicts, as well as assorted news clippings and reports, including the United States Department

of State's 2009 Country Report on Human Rights Practices in Sri Lanka.

On January 6, 2011, the BIA denied Perera's motion to reopen as untimely, holding that the new evidence submitted did not demonstrate a material change in country conditions. The BIA explained that most of the new evidence merely indicated a continuation, rather than a change, of conditions in Sri Lanka. The only evidence that did not fit this mold was the detention of Perera's husband by immigration officers, which the BIA said did not affect Perera's eligibility for relief because it was not due to an imputed political opinion and did not suggest an increased risk of torture.

This petition for review followed on January 31, 2011.

**II.**

Motions to reopen removal proceedings "are disfavored due to the strong public interest in concluding litigation." Ratnasingam v. Holder, 556 F.3d 10, 15 (1st Cir. 2009). "As a result, the BIA enjoys considerable latitude in deciding whether to grant or deny such a motion." Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007). Our review of such decisions is solely for abuse of discretion. See Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010). "This means, in effect, that such a decision will stand unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious,

or irrational way." Raza, 484 F.3d at 127; see also Smith, 627 F.3d at 433.

The BIA may entertain an untimely motion to reopen if an alien makes a convincing demonstration of changed conditions in his or her homeland. See 8 C.F.R. § 1003.2(c)(3)(ii); Raza, 484 F.3d at 127. "Those changes, however, must be material to the underlying substantive relief that the alien is seeking . . . and the evidence tendered in support thereof must have been unavailable during the prior proceedings." Raza, 484 F.3d at 127. In addition, the new evidence submitted, together with the evidence already in the record, must establish a prima facie showing of eligibility for the underlying substantive relief sought by the alien. See Smith, 627 F.3d at 438-39.

Perera contends that the BIA abused its discretion in holding that the changed-conditions exception did not warrant reopening her removal proceedings. She argues that the affidavits submitted in support of her motion to reopen, which describe the police's continued interest in her whereabouts and her husband's temporary detention by Sri Lankan immigration officers, demonstrate that events subsequent to her original application for relief have increased her risk of persecution and torture in Sri Lanka.

We discern no abuse of discretion. The affidavits accompanying Perera's motion to reopen generally reflect a continuation of conditions that existed in Sri Lanka at the time of

Perera's original application for relief. In particular, the affidavits' description of the police's ongoing efforts to locate Perera adds nothing new to the mix. Perera described similar efforts in her original application, and there is no indication that the police have intensified their search in any manner. See Tawadrous v. Holder, 565 F.3d 35, 38 (1st Cir. 2009) (stating that evidence accompanying a motion to reopen "must demonstrate the intensification or deterioration of country conditions, not their mere continuation"); Ratnasingam, 556 F.3d at 15 (dismissing petition because evidence "did not demonstrate intensified persecution but mirrored evidence submitted in support of [petitioner's] original application"). Moreover, the additional evidence does nothing to undermine the earlier conclusion of the IJ and the BIA that the mistreatment suffered by Perera was financially, not politically, driven.

To the extent that the affidavits do reflect changed conditions, the changes are not material to Perera's eligibility for relief. The only new development of note is the detention of Perera's husband by Sri Lankan immigration officers. Perera claims that this event warrants reopening her removal proceedings, pointing to our statement in Smith that "recent violence against a petitioner's family members can constitute a material change in country conditions." 627 F.3d at 436. However, there is no evidence that Perera's husband was harmed during his detention or,

-8-

indeed, that his detention was prompted by anything other than his possession of falsified travel documents and violation of Sri Lanka's immigration laws. As such, the detention does not increase the risk that Perera will be persecuted on account of an imputed political opinion or any other protected ground if returned to Sri Lanka.

## III.

In sum, Perera has failed to introduce new, material evidence of changed conditions in Sri Lanka. Accordingly, we hold that the BIA did not abuse its discretion in denying her untimely motion to reopen her removal proceedings.

The petition for review is <u>denied</u>.

So ordered.