Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 11-1853

RUBEN PEREZ and AURA ORTEGA PEREZ,

Petitioners,

v.

ERIC H. HOLDER, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Stahl, and Lipez, <u>Circuit Judges</u>.

<u>Randy Olen</u>, on brief for petitioner.
<u>Monica G. Antoun</u>, Trial Attorney, Office of Immigration Litigation, <u>Tony West</u>, Assistant Attorney General, Office of Immigration Litigation, and <u>Jennifer Parker Levings</u>, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

June 20, 2012

**STAHL, <u>Circuit Judge</u>**.  Ruben Perez and his wife, Aura Ortega Perez, petition for our review of the denial by the Board of Immigration Appeals (BIA) of their motion to reopen their removal proceedings.  Though the facts of this case are troubling, we see no abuse of discretion in the BIA's actions, and we therefore deny the petition.

## I. Background

Ruben Perez, a Guatemalan citizen, entered the United States without inspection on July 1, 1990.[1]  He and his family remained in the United States illegally for some time, eventually applying for asylum and withholding of removal on June 26, 1998.  The Perezes' application was referred to an immigration judge (IJ) for adjudication and the family was placed in removal proceedings; they received their notice to appear on October 5, 1998.[2]

The Perez family appeared before the IJ for their merits hearing on March 20, 2000.  At the hearing, both Ruben and Aura testified that Ruben's cousin was murdered by guerrillas in Guatemala.  Ruben testified that he never personally had any contact with guerrillas.  Aura testified that, though she had never

---

[1] Aura and the couple's son, Esvin, entered without inspection on August 1, 1993.

[2] The referral was based on the fact that the application fell well outside of the one year statute of limitations for asylum applications, but the IJ found that the Perezes' failure to file was based on their retained representative's ineffective assistance and excused the late filing.

observed it herself, she had heard that Ruben was followed by unknown people. She also testified that she had never had any contact with the guerrillas. Both Ruben and Aura testified that they had never belonged to any political group in Guatemala. They both also testified that they feared for Ruben's life if they returned to Guatemala because his cousin had been killed, allegedly by guerrillas.

The IJ issued an oral decision on the same day, denying the application for asylum and withholding of removal and holding that the Perezes had not established a well-founded fear of future persecution because the war between the Guatemalan government and the guerrillas had ended years earlier. The IJ did, however, grant voluntary departure. The Perezes appealed the IJ's decision to the BIA, which summarily affirmed the IJ on April 19, 2002. The Perezes did not appeal that decision, nor did they depart from the United States.

However, Ruben's brother, Cesar Perez Hernandez, did return to Guatemala. On November 19, 2008, two months after leaving the United States, Hernandez was driving in his car with his family when another car pulled up beside them and began shooting. Hernandez was shot numerous times and killed, and his wife, son, and daughter were all injured from gun shot wounds. Hernandez's son was shot in the face and lost his right eye as a

result.  The police did not solve the crime or establish a motive therefor.

On March 29, 2011, nearly nine years after the BIA's decision and some twenty-eight months after the murder of Hernandez, the Perezes filed a motion with the BIA to reopen their removal proceedings, recounting the facts of the grisly attack, and renewing their argument that they possessed a well-founded fear of future persecution should they return to Guatemala.  They based their argument on their speculation that Hernandez was killed because he had recently returned to Guatemala from the United States and the Perezes feared the same outcome should they go back to Guatemala.  The Perezes supported their motion to reopen with an affidavit from Ruben and a newspaper article reporting on the murder.

On July 7, 2011, the BIA denied the motion to reopen as untimely, finding that the exception to the ninety-day time limit based on changed circumstances did not apply.  See 8 C.F.R. § 1003.2(c)(3)(ii).  The BIA found instead that the Perezes had merely demonstrated that a "terrible crime" had taken place, and that their fear was of "generalized violence and crime in their home country," which did not amount to a valid basis for asylum. The Perezes timely appealed to this court.

## II. Discussion

We review the denial of a motion to reopen only for abuse of discretion, meaning that we will uphold the BIA "unless the complaining party can show that the BIA committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Tandayu v. Mukasey, 521 F.3d 97, 100 (1st Cir. 2008) (quoting Raza v. Gonzales, 484 F.3d 125, 127 (1st Cir. 2007)). This is because "motions to reopen removal proceedings are disfavored as contrary to the compelling public interests in finality and the expeditious processing of proceedings." Id. (quoting Raza, 484 F.3d at 127) (internal quotation marks omitted).

In order to be eligible for asylum, among other requirements, an applicant must show that he possesses a well-founded fear of future persecution on account of one of five statutory bases: race, religion, nationality, membership in a particular social group, or political opinion. See, e.g., Smith v. Holder, 627 F.3d 427, 436-37 (1st Cir. 2010) (citing 8 C.F.R. § 208.13(b)(2)(i)(A)). When the BIA has found that an applicant has not met the requirements for relief, that applicant is permitted to file one motion to reopen the removal proceedings within ninety days of the BIA's final decision. 8 C.F.R. § 1003.2(c)(2). These time and number limitations do not apply if the applicant can show changed circumstances in his home country and if the evidence of those changed circumstances is "material to

-5-

the underlying substantive relief" sought and was unavailable at the time of the prior proceedings. See Raza, 484 F.3d at 127 (citing 8 C.F.R. § 1003.2(c)(3)(ii)). In addition to providing previously unavailable material evidence of changed country conditions, an applicant needs to "establish a prima facie case sufficient to ground a claim of eligibility for the underlying substantive relief requested." Id. at 128. In other words, "the new facts alleged, when coupled with the facts already of record, [must] satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening." Smith, 627 F.3d at 438 (quoting In re L-O-G-, 21 I. & N. Dec. 413, 419 (BIA 1996)). This means that the Perezes' proffered evidence must present "a reasonable likelihood that [they] will face future persecution based on a statutory ground." Id. at 437 (internal quotation marks omitted). The standard for granting reopening is the same for both asylum and withholding of removal. Id. at 437 n.10.

The Perezes argue that, though their motion to reopen was filed years after the BIA's final decision, the brutal attack against the Hernandez family, combined with the previous murder of Ruben's cousin, qualifies as changed country conditions and that therefore the ninety-day limit should not be applied to their motion. The Perezes have one thing working in their favor: we have previously held that "recent violence against a petitioner's family members can constitute a material change in country conditions for

-6-

a petitioner seeking to reopen his or her removal proceedings."

Id. at 436; see also Malty v. Ashcroft, 381 F.3d 942, 945-46 (9th Cir. 2004).

However, we need not decide if the two murders of Ruben's family members are sufficient to show a material change in country conditions, because the Perezes cannot establish a prima facie case for asylum.[3] To make out a prima facie case, the persecution feared must be on account of a statutorily protected ground.[4] See, e.g., Smith, 627 F.3d at 436-37. In their initial asylum application, the Perezes seemed to allege membership in the particular social group of those people who refused to join the guerrillas. They have abandoned that stance in these proceedings, and for good reason: since the civil war in Guatemala ended, we have repeatedly held that fear of persecution by guerrillas will no longer give rise to a successful asylum claim. See, e.g., Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35-37 (1st Cir. 2005);

---

[3] A failure to make a prima facie case for asylum necessarily means the Perezes have also failed to do so with regard to their withholding of removal claim. See Parvez v. Keisler, 506 F.3d 93, 98 (1st Cir. 2007). We therefore do not further address the withholding of removal claim.

[4] We note that, in instances where courts, including ours, have held that violence against family members was sufficient to show a material change in country conditions, there has been a close nexus to a statutory basis. See Smith, 627 F.3d at 431 (violence connected to political activism); Malty, 381 F.3d at 946 (violence connected to status as a Coptic Christian).

-7-

Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 125 (1st Cir. 2005); Quevedo v. Ashcroft, 336 F.3d 39, 44-45 (1st Cir. 2003).

In their motion to reopen and on appeal here, the Perezes do not clearly identify any nexus to a statutory ground. The closest they come is to speculate that Hernandez was killed due to his status as a Guatemalan who had recently returned from the United States, and presumably, because the Perezes would also be Guatemalans returning from the United States, that they would be persecuted on that account. We have previously declined the opportunity to recognize Guatemalans returning from the United States as a "particular social group" for purposes of asylum relief. See, e.g., Socop v. Holder, 407 F. App'x 495, 498 & n.1 (1st Cir. 2011) (finding "unassailable" the BIA's rejection of the petitioner's claim that he would be targeted on account of his status as a Guatemalan returning from the United States and approving of BIA's determination that criminals in Guatemala would target anyone who might provide money or valuables); Reyes Beteta v. Holder, 406 F. App'x 496, 499 (1st Cir. 2011) (rejecting petitioner's claimed fear of future persecution based on belonging to the group "expatriates returning from working in the United States and are perceived to have wealth" because criminal activity was widespread and non-targeted); see also Perez-Hernandez v. Att'y Gen., 444 F. App'x 390, 393 (11th Cir. 2011) (rejecting claim of well-founded fear of future persecution based on membership in the

-8-

group of "Guatemalans returning from the United States" as unsupported by the record, which instead showed widespread violence); Gonzalez v. Holder, 420 F. App'x 703, 704 (9th Cir. 2011) (rejecting similar claim). This case does not compel us to recognize such a group for the first time, as the Perezes have not provided a shred of evidence connecting Hernandez's repatriation to the attack. A complete lack of documentation is certainly not sufficient to show a "reasonable likelihood" that the Perezes will face persecution on account of their status as Guatemalans returning from the United States. See López-Castro v. Holder, 577 F.3d 49, 53 (1st Cir. 2009) ("Without knowing who was responsible for the killings [of the petitioner's family members] or what had prompted them, it is no more than a guess that a nexus existed between the deaths and a statutorily protected ground.").

It is more likely that this is just another tragic occurrence of the widespread violence in Guatemala that we have frequently observed, but fear of this pervasive violence cannot be a basis for asylum. See Palma-Mazariegos, 428 F.3d at 37 (noting that the State Department Country Conditions Report "attests that the threat of violence afflicts all Guatemalans to a roughly equal extent, regardless of their membership in a particular group or class," and that threat will therefore not support a well-founded fear of future persecution); Quevedo, 336 F.3d at 44 ("This Circuit has rejected the contention that pervasive non-political

criminality in Guatemala constitutes a basis for asylum."). This is the same conclusion that the BIA reached when it determined that the Perezes had not shown the attack on the Hernandez family "to be something other than a terrible crime" and that the Perezes' resulting fear was "of generalized violence and crime" in Guatemala and thus insufficient as a basis for asylum. While we are troubled and saddened by the attack on the Hernandez family, we are not persuaded that "it would be worthwhile to develop the issues further at a plenary hearing on reopening." <u>Smith</u>, 627 F.3d at 438.

### III. Conclusion

Discerning no abuse of discretion, we <u>deny</u> the petition for review.