[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 24, 2011
JOHN LEY
CLERK

No. 11-10610
Non-Argument Calendar
_____

Agency No. A072-513-025

HECTOR ISAAC PEREZ-HERNANDEZ,
MARIELA VIVIANA MALDONADO-FUENTES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(October 24, 2011)

Before EDMONDSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Hector Isaac Perez-Hernandez ("Perez") petitions for review of the Board of

Immigration Appeals's ("BIA") final order affirming the Immigration Judge's

("IJ") denial of his application for asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT").[1] Perez, a native and citizen of Guatemala, claims (1) he suffered past persecution on account of imputed political opinion and (2) he fears future persecution based his membership in a particular social group, that is, Guatemalans returning from the United States, who are perceived as wealthy targets for kidnappers.[2] After review, we deny the petition for review.[3]

To establish eligibility for asylum, a petitioner must show either past persecution or a well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group or political opinion. Immigration and Nationality Act ("INA") § 101(a)(42)(A), 8 U.S.C.

[1]On appeal, Perez does not challenge the denial of his request for CAT relief, and, therefore, he has abandoned that claim. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) ("When an appellant fails to offer argument on an issue, that issue is abandoned.").

[2]Perez included his wife, Mariela Viviana Maldonado-Fuentes, as a derivative beneficiary on his application. Although our opinion refers to Perez, our holding as to the asylum claim applies equally to Perez's wife. However, withholding of removal under the Immigration and Nationality Act does not provide derivative benefits. See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007). Thus, we deny the petition for review as to his wife's withholding of removal claim on that ground.

[3]Where, as here, the BIA issues its own opinion, we review only that opinion, except to the extent it adopts the IJ's reasoning. Todorovic v. U.S. Att'y Gen., 621 F.3d 1318, 1324 (11th Cir. 2010). Under the "highly deferential substantial evidence test," we "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision, and we will reverse the agency's findings only if the evidence compels a reasonable fact finder to find otherwise." Id. (quotation marks and citations omitted).

2

§ 1101(a)(42)(A); Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005); 8 C.F.R. § 208.13(a), (b).  Similarly, an alien seeking withholding of removal must show that he has been or will be persecuted on account of one of the five protected grounds in his home country.  INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); Sepulveda, 401 F.3d at 1232; 8 C.F.R. § 208.16(b)(1)-(2).  To establish a nexus between the statutorily protected ground and the feared persecution, the applicant must present either: (1)  "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such ground," Mehmeti v. U.S. Att'y Gen., 572 F.3d 1196, 1200 (11th Cir. 2009) (quotation marks omitted); or (2) a "pattern or practice" of persecuting a group of people similarly situated to the alien on account of a protected ground. Id.; 8 C.F.R. § 208.13(b)(2)(iii).

To establish persecution on account of political opinion, the applicant must show that he was persecuted or fears persecution because of his own actual or imputed political opinion, not because of his persecutor's political motives.  INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S. Ct. 812, 816 (1992).  For this reason, being targeted by a political group for refusing to cooperate or being the victim of acts of private violence, such as extortion, does not constitute persecution on account of political opinion.  See, e.g., Rivera v. U.S. Att'y Gen., 487 F.3d 815,

3

821-23 (11th Cir. 2007) (extortion and threats by guerillas); Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004) (refusal to cooperate with guerillas).

In addition, although the INA does not define persecution, we have stated that it is "an extreme concept requiring more than a few isolated incidents of verbal harassment or intimidation." Ruiz v. Gonzalez, 479 F.3d 762, 766 (11th Cir. 2007) (quotation marks omitted). Consequently, mere threats or brief detentions do not rise to the level of persecution. See, e.g., Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1237 (11th Cir. 2006) (concluding condolence note and threatening phone calls were mere harassment rather than persecution); Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1289-91 (11th Cir. 2006) (concluding five-day detention was not persecution).

Here, substantial evidence supports the IJ's and the BIA's findings that Perez did not suffer past persecution in Guatemala. Perez testified that between 1988 and 1991, while he was a teenager tending his mother's cows in the field, he sometimes encountered either guerillas or government officials carrying guns and was questioned by them. The government officials usually asked Perez whether he had seen any guerillas and to tell them if he saw any guerillas. They also asked Perez where he lived, who his parents were and whether Perez had any siblings. They warned Perez that if he said anything about what they had asked him, he

"would be . . . punished or basically killed."

When Perez encountered the guerillas, they asked him similar questions about the government officials. The guerillas invited Perez to join them and offered to teach him to use a gun to kidnap rich people for money. Perez refused, telling the guerillas he did not want to and that he was just "walking the cows." Perez admitted that the government officials and guerillas questioned and tried to recruit other people living in his village and that the two groups questioned him only because they happened to encounter him in the cow field.

Under our precedent, the sort of brief detentions, interrogations and threats Perez described do not amount to past persecution. Perez was never harmed in any way and was only threatened with harm if he talked to anyone about the interrogations. Indeed, neither the guerillas nor the government officials seemed to be singling Perez out for mistreatment, but merely asked him questions because they happened upon him in the area and wanted information. Furthermore, Perez's resistance to the guerillas' efforts to recruit him did not result in any harm and, in any event, any mistreatment for refusing to cooperate with them would not constitute persecution based on Perez's political opinion. In sum, the record does not compel a conclusion that Perez was persecuted on account of a statutorily protected factor.

Substantial evidence also supports the IJ's and the BIA's finding that Perez failed to show a well-founded fear of future persecution "on account of" a statutorily protected factor. Perez believed he or his family would be kidnapped by guerillas because Guatemalans who return from the United States are perceived as wealthy. However, for the reasons stated above, a fear of financially motivated crimes by guerilla groups is not a fear of persecution on account of political opinion.

As for Perez's claim that he is a member of a particular social group defined as Guatemalans returning from the United States, the record does not contain evidence compelling a conclusion that guerillas (or former guerillas) persecute members of such a group.[4] Rather, the record suggests that Guatemala has widespread problems with poverty, violence and police corruption (including police involvement in kidnappings for ransom), that former guerillas have joined criminal gangs who harm all kinds of Guatemalans and that these gangs kidnap wealthy Guatemalans for money. The BIA has concluded that affluent Guatemalans who are the victims of kidnapping and extortionate threats are not

[4]The parties dispute whether Guatemalans returning from the United States are a particular social group within the meaning of the INA. We do not address that issue because, even assuming arguendo that they are, Perez failed to show the required nexus, i.e., a reasonable possibility that he would be singled out for persecution because of his membership in that group or that there is a "pattern or practice" of persecution of such a group.

6

members of a particular social group, and Perez does not challenge that ruling on appeal.  See In re A-M-E- v. J-G-U-, 24 I. & N. Dec. 69, 73-77 (BIA 2007).

As evidence that Guatemalans who return from the United States are targeted, Perez points to the fact that his brother-in-law, who returned from the United States to start his own business, was shot to death while driving a truck.[5] The attackers took his wallet and money.  Later, Perez's sister received an anonymous call to collect her husband's wallet.  Inside, she found a letter stating that the attackers "finally got what they were looking for off him."

However, there is no evidence in the record indicating who killed Perez's brother-in-law or why, much less that his time living in the United States was a motivating factor.  As the BIA concluded, Perez's belief that former guerillas killed his brother-in-law because he had returned from the United States (as opposed to because he was a successful and wealthy businessman) was based on speculation.

---

[5]Perez argues that the IJ and the BIA erroneously found that his brother-in-law was killed in 1997 because the death certificate and other documents in the record show he was killed in 2007.  This alleged error, if one at all, does not warrant reversal.  First, Perez testified that his brother-in-law was killed in 1997.  Second, Perez failed to point out the alleged factual error or his erroneous hearing testimony to the BIA.  Third, the date of his brother-in-law's death was irrelevant to the IJ's and the BIA's decisions.  Although the BIA mentioned in its recitation of the facts that Perez's brother-in-law was killed in 1997, it did not rely on this fact in concluding that Perez failed to show a motive for the killing or how the killing related to Perez.  Accordingly, any alleged error as to the date of the killing was harmless.

Perez also highlights the fact that in 2003 or 2004 his parents received an anonymous call asking when Perez would return. The caller said that he was waiting for Perez to return because he heard Perez was doing well in the United States. However, there is no evidence as to the caller's identify or specifically what the caller wanted from Perez. On this record, we are not compelled to conclude that Perez or his family would be targeted for persecution because they are returning from the United States. See Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc) (explaining that the fact that some evidence in the record supports a contrary conclusion does not warrant reversal under the substantial evidence test).

Because Perez failed to show eligibility for asylum, the IJ and the BIA correctly concluded that Perez also failed to meet the higher standard of proof for eligibility for withholding of removal. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1292-93 (11th Cir. 2001) (explaining that an alien generally cannot qualify for withholding of removal if he is unable to meet the lower standard of proof for asylum). Accordingly, we deny Perez's petition with respect to his claims of asylum and withholding of removal.

**PETITION DENIED.**